LEWIS H. JOSEPH, Respondent, v. HENRY A. SCHATZKIN et al., Appellants.

(Argued March 21, 1932; decided June 1, 1932.)

*William L. Cohn* for appellants. An infant cannot recover moneys lost to him by his own acts. (*Crummey* v. *Mills,* 40 Hun, 370; *Green* v. *Green,* 69 N. Y. 556; *Wheeler & Wilson Co.* v. *Jacobs,* 2 Misc. Rep. 236; *Pierce* v. *Lee,* 36 Misc. Rep. 870; *Lown* v. *Spoon,* 158 App. Div. 900; *Sparandera* v. *Staten Island Garage, Inc.,* 117 Misc. Rep. 780.)

*Osmond K. Fraenkel, amicus curiæ.* An infant is not entitled to rescind a transaction executed by his agent. (*Crummey* v. *Mills,* 40 Hun, 370; *Pierce* v. *Lee,* 36 Misc. Rep. 870; *Welch* v. *Welch,* 103 Mass. 562; *Casey* v. *Kastel,* 237 N. Y. 305.)

*Julius Steinberg* and *Harry Dubinsky* for respondent. An infant may repudiate his transactions with a stockbroker and recover the money deposited by him. (*Mordecai* v. *Pearl,* 18 N. Y. Supp. 543; 136 N. Y. 625; *Ruehl* v. *Kardos,* 204 App. Div. 499; *Heath* v. *Mahoney,* 7 Hun, 100; *Falk* v. *MacMasters,* 197 App. Div. 357; *Beardsley* v. *Hotchkiss,* 96 N. Y. 201; *New York Building Loan Co.* v. *Fisher,* 23 App. Div. 365; *Casey* v. *Kastel,* 237 N. Y. 305; *Stafford* v. *Roof,* 9 Cow. 626.) The damages were properly assessed. (*Mordecai* v. *Pearl,* 18 N. Y. Supp. 583; 136 N. Y. 625; *Casey* v. *Kastel,* 237 N. Y. 305.)

O'BRIEN, J. At a time when American stocks and other securities were selling at grossly inflated prices on all the exchanges of the world, plaintiff, a youth lacking a few months of the attainment of his majority, opened a speculative account with a firm of brokers in New York. He transferred that account to defendants, another brokerage firm, and on November 1, 1928, he caused to be delivered to them four hundred shares of three different issues which his former brokers had carried for him and which then possessed a market value of $17,250. Defendants paid the debit balance of $13,907.91 to those brokers, leaving to plaintiff on that day an interest or equity of

$3,342.09 in these stocks. Prior to the date of this transaction, defendants were carrying a marginal account with plaintiff. It was continued with numerous purchases and sales until it was closed April 2, 1929, by payment to him of the sum of $70.99. While yet in his minority, plaintiff rescinded his agreement with his brokers and disaffirmed the entire transaction. This action is for the recovery of the amount which he alleges to represent the value of his equity in the four hundred shares of stock November 1, 1928, minus the sum paid to him on the closing of his account.

The contract between defendants and their infant customer was not void. At his election it was merely voidable. (*Casey* v. *Kastel*, 237 N. Y. 305.) If the series of transactions growing out of his marginal trading had resulted in profit, he candidly admits the obvious truth that he would have been content with his contract and would have accepted its advantages. Whatever may be the individual opinion respecting the commercial ethics of one who, after loss instead of profit in speculation, rescinds the agreement into which he voluntarily entered, the rule is clear that the property of a minor is tenderly safeguarded by the law (*Green* v. *Green*, 69 N. Y. 553) and it confers upon him the right to discard liability toward those who in good faith have dealt with and trusted him. At their peril merchants and traders and all others maintain financial relations with that type of minor who is willing to avail himself of his legal prerogative to repudiate engagements which many regard as moral obligations. In a case such as the one before us, courts are limited to the function of ascertaining and declaring the rule relating to the measure of damage.

Since this contract is voidable only, it cannot be made void *ab initio* by the mere act of rescission. Prior to avoidance no tort is committed (*Casey* v. *Kastel, supra*) and in this case no tort by the brokers was at any time committed. Acts by defendants, if authorized by the

infant, were not wrongful. All their acts were authorized by him. After disaffirmance, the infant is not entitled to be put in a position superior to such a one as he would have occupied if he had never entered into his voidable agreement. He is not entitled to retain an advantage from a transaction which he repudiates. " The privilege of infancy is to be used as a shield and not as a sword." (Kent, vol. 2, p. 240; *Rice* v. *Butler*, 160 N. Y. 578.) If he has reaped a benefit, he must return it or its value. (*Rice* v. *Butler, supra;* but see contra, *Green* v. *Green, supra.*) In a case of marginal trading, however, where nothing has been received, nothing need be restored. (*Mordecai* v. *Pearl*, 63 Hun, 553; affd., 136 N. Y. 625; Meyer, The Law of Stock Brokers and Stock Exchanges, § 125.) This plaintiff had title to the certificates for the four hundred shares of stock delivered on November 1 to defendants but he never took possession. Against them defendants merely had a lien for the unpaid balance of their purchase price. Always, until their sale, they remained with the brokers. The small balance due and paid to plaintiff on the closing of his account has been deducted from the value of his equity at the time his shares were delivered to defendants. It is plain, therefore, that in this case no benefit was derived and, therefore, there is nothing for plaintiff to restore. In seeking the rule which determines the measure of damage, the question is whether the value of plaintiff's interest or equity in the four hundred shares at the date of their delivery to defendants or its value at the date of plaintiff's disaffirmance of the agreement is controlling.

The stability of plaintiff's interest or, if the term may be accurately used, his equity in these securities was less firmly established than would be such property right as he might have had in a cash credit, if money instead of stocks had been deposited as margin. The value of cash, or of credit based upon a deposit of cash, would have remained constant. As the market price of the

stocks which were purchased for him rose or fell, the margin between their prices and the value of a credit founded upon a cash deposit would have expanded or contracted but the standard of value represented by the cash deposit would have continued immutable. Not so in respect to the value of the stocks which were pledged as security for the unpaid balance of their own market price and also as collateral for those other stocks which were later acquired and which were included within plaintiff's account. The value of this collateral security, unlike cash, was subject to constant fluctuation and, of course, it did in fact vary from day to day. Two decisions in the former General Term are cited by the adverse parties at bar. They are in conflict but, although the actual determination of one was affirmed without opinion by this court, neither controls the rule to be applied by us. (*Crummey* v. *Mills*, 40 Hun, 370; *Mordecai* v. *Pearl*, 63 Hun, 553; affd., 136 N. Y. 625.) We are free to accept or reject the argument of either opinion. In the *Crummey* case the infant originally deposited stock and, later from time to time, money as margin for the purchase of stock. The market price of all his shares declined and when he was sold out he was indebted to his brokers. In his action to recover both his stock and his money he was granted no relief. There was no appeal to this court. In the *Mordecai* case the infant's margin consisted exclusively of money and his adversary conceded that he was entitled to recover it, provided he returned whatever he had received under the contract. The essential part of the decision is that he had never received any benefit and, therefore, under the concession, he was entitled to recover the fixed sums of money without deduction. There the thing deposited as margin was static, here it was variable and fluctuating. In neither case was any benefit received by the infant. If, in the case at bar, the series of transactions had been void or if the infant's disaffirmance could be held to operate

retroactively and to relate back to the date of the delivery of the securities to defendants, plaintiff would be entitled to recover the value of his equity in them as of that date. Until disaffirmance, however, the agreement was entirely valid and all action taken under it was wholly regular and, therefore, until disaffirmance no cause of action arose. If a fixed sum of money had been deposited, then at the date of disaffirmance plaintiff would probably have become entitled to recover that amount. The same date must be assigned for his right to the return of such stock as had been delivered to defendants as security, subject to defendants' lien, if that stock still remained with them. Since plaintiff's four hundred shares had been sold at his order prior to disaffirmance and the proceeds of the sale credited to his account, they were no longer in defendants' possession. Plaintiff had the right to receive only his proportion of their value as of the date when otherwise he would have been entitled to obtain the shares themselves upon payment of defendants' lien on them.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

CRANE, J. (concurring only in result). In the result arrived at by Judge O'BRIEN I agree, but I have a different view regarding the recovery permitted the plaintiff. As an infant repudiating his transactions with the stockbrokers he can receive no benefit whatever from his bargain. He must repudiate or confirm in toto from the beginning of his dealings in the transaction. From this speculation in stocks he can derive no benefit. He cannot accept part of the profits and repudiate all the losses. (1 Williston on Contracts, § 236; Anson on Contracts [3d Amer. ed. by Corbin], p. 184, § 161b; Meyer, The Law of Stock Brokers and Stock Exchange, § 125, p. 496; see *Myers* v. *Hurley Motor Co.*, 273 U. S. 18, 21; *Benson* v. *Tucker*, 212 Mass. 60; *Casey* v. *Kastel*, 237 N. Y. 305.)

Applying this rule to the present facts, all the infant can get back on this transaction which he has repudiated is the amount of the margin which he deposited with Leopold Spingarn & Co. With this brokerage house he had opened a margin account which they carried for him. He could not obtain the stocks which he had purchased on margin without paying to them the amount due. This he never paid. He procured these defendants to take over the account by paying to Leopold Spingarn & Co. $13,907.91. These defendants, at the plaintiff's request, were merely substituted for the first brokers. It was all one transaction. The only money ever parted with by the infant was the amount he put up with Leopold Spingarn & Co. He cannot confirm his transaction with Spingarn & Co. and repudiate it with these defendants. To do so would permit him to recover a profit which he never took, and was never entitled to receive until he had met the conditions by paying up his margin of $13,907.91. From the beginning of his dealings with the first brokerage firm until his account was sold out, he, as an infant, had only lost that which he first parted with. If the courts give him more it is to give him the profits on a transaction to which he was never entitled without confirmation of his dealings and a payment by him of the margin due. When these defendants took over the account and advanced that margin to Leopold Spingarn & Co., the apparent profits or increase in the value of the stocks was not the absolute money of this plaintiff; he could not get it even from these defendants without confirming the transaction by repaying to them the amount they had advanced. On the very day these defendants took over his account, he could only have recovered the actual amount parted with by him; he could not recover profits without confirming his dealings.

Consequently, all that this plaintiff is entitled to is the actual money, with interest, which he parted with to Leopold Spingarn & Co. The record does not show

us the amount of this deposit. While there must be a reversal and new trial, I am of the opinion that the infant is entitled to the return of this money, and no more.

POUND, Ch. J., LEHMAN and HUBBS, JJ., concur with O'BRIEN, J.; CRANE, J., concurs in result in memorandum; KELLOGG, J., not sitting.

Judgments reversed, etc.