George M. Fanelli, J.
This motion, brought by plaintiff pursuant to subdivision 6 of rule 109 of the Rules of Civil Practice, to strike out two separate and distinct defenses because of legal insufficiency, presents many interesting questions concerning conflict of laws, charitable corporate immunity and construction of agreements of exemption from liability for negligence.
The action is one to recover damages for the death of plaintiff’s 15-year-old daughter, which occurred on July 29, 1956, while said infant, together with a group of other children, was engaged in a venture of climbing Mt. Hood, in the State of Oregon.
Defendant is admittedly a New York corporation and is engaged in the business of conducting groups of youths on trips and tours to places of historical and cultural interest in America and abroad. It is further admitted that plaintiff’s daughter was, at the time of her death, a member of said group, for a valuable consideration paid to defendant by her plaintiff father.
The complaint consists of two causes of action and is based on negligence. The first cause of action is brought pursuant to an Oregon statute (Ore. Rev. Stats., § 30.010) which specifically gives a right of action to plaintiff in his individual capacity for the death of his daughter, and the second cause of action is brought pursuant to another Oregon statute (Ore. Rev. Stats., § 30.020) which gives plaintiff, as administrator of his daughter’s estate, a representative cause of action on behalf of her estate for damages not exceeding $20,000 including a recovery for funeral, burial, doctors, hospitals or nursing services for the decedent.
*10 The answer is so worded that it is not too clear whether the defenses, which are now the subject of attack, apply to both causes of action or only the second cause of action. However, for the purpose of this motion, and the decision to be made herein the court will consider that said critical defenses were intended to apply to both causes of action.
The first defense alleges (and the court on a motion such as this must assume the allegations to be true), “ that defendant is an eleemosynary institution and immune from liability ”. The question to be decided at the outset, is whether the law of Oregon or this State governs the substantive rights and obligations of the parties to this lawsuit. The answer to this preliminary question is no longer debatable. Since the accident and death occurred in Oregon, the law of the lex loci (Oregon) and not the law of the forum (New York) governs unless our public policy forbids (which it does not) (Poplar v. Bourjois. Inc., 298 N. Y. 62; Benton v. Safe Deposit Bank, 255 N. Y. 260; Mencher v. Goldstein, 240 App. Div. 290; Coster v. Coster, 289 N. Y. 438; New Amsterdam Cas. Co. v. Stecker, 1 A D 2d 629, affd. 3 N Y 2d 1; Metcalf v. Reynolds, 267 N. Y. 52; Smith v. Clute, 277 N. Y. 407).
Turning to the law of Oregon, we find that in that State charitable or eleemosynary corporations do have immunity from tort liability (Landgraver v. Emanuel Lutheran Charitable Bd., 203 Ore. 489 [1955]). In said case, the Oregon Supreme Court was asked to re-examine the question of tort liability insofar as it applied to charitable institutions in Oregon and to adopt a new rule holding them liable for their negligent acts. However, the majority of the court was reluctant to adopt a new rule and while it recognized the fact that many courts of high repute in sister States have in the light of changed conditions, overturned the rule of immunity, expressly overruling their prior decisions in which the doctrine was recognized, nevertheless, felt that it was not yet ready to make the change. However, the court majority had this to say (p. 494): “We are divided in this court as to the proper course to be taken. Whatever a divided court may decide today may be changed tomorrow, if there happens to be a change in the personnel of the court, or a change of opinion on the part of members of the court as now constituted. The matter is of the highest importance to every charitable institution in Oregon * * *. In such circumstances, it seems clear that any change in the public policy of this state should be a matter solely for legislative determination.”
*11 Needless to say, the dissenting opinion (concurred in by the Chief Justice) after reviewing the numerous States which in recent years have overridden the doctrine of immunity, held that the time had come when justice could be done in no other way than by overruling their earlier cases and aligning themselves with the prevailing modern authority.
Apparently, the said dissenting opinion, in referring to the prevailing modern authority regarding said immunity doctrine, had in mind the State of New York. It is now and has been the settled law of New York for more than 20 years that charitable corporations organized in New York are not immune for the torts of their servants because of the theory that the public and private donations that supported charitable institutions constituted a trust fund which could not be diverted. (Sheehan v. North Country Community Hosp., 273 N. Y. 163; [1937]; Dillon v. Rochaway Beach Hosp., 284 N. Y. 176; Bing v. Thunig, 2 N Y 2d 656.)
In the light of such ostensible conflict of laws between Oregon and New York, a careful reading and analysis of the cases leads inescapably to the conclusion that the decisional law of Oregon, wherein immunity is granted, must perforce be restricted to Oregon corporations and not to foreign corporations such as the defendant in this case. The leading cases in Oregon (Hill v. Tualatin Academy, 61 Ore. 190 [1912]; O’Neill v. Odd Fellows Home, 89 Ore. 382 [1918]; Hamilton v. Corvallis Gen. Hosp., 146 Ore. 168 [1934]; Gregory v. Salem Gen. Hosp., 175 Ore. 464 [1944]; Landgraver v. Emanuel Lutheran Charitable Bd., 203 Ore. 489 [1955], supra; Ackerman v. Physicians & Surgeons Hosp., 207 Ore. 646 [1955], revd. on rehearing 207 Ore. 657 [1956]), all involved corporate defendants who were organized under and by virtue of the laws of the State of Oregon. There does not appear a single Oregon case which has held that a foreign charitable corporation is immune from liability for tort, where, under the law of the State of incorporation the corporation is not granted immunity.
As far as New York is concerned, there seems to be a dearth of authority on the subject. However, the case of Heinemann v. Jewish Agric. Soc. (178 Misc. 897, affd. 266 App. Div. 907) appears to be highly pertinent. In that case, the defendant was a New York corporation which maintained a farm in New Jersey. The plaintiff was injured while riding in an automobile owned by the defendant and operated by one of its employees. The court held that the plaintiff was an invitee to whom the defendant owed the duty of reasonable care and that this duty was violated by the negligent operation of the *12 automobile. The remaining question was whether the defendant was immune from liability because it was a charitable corporation. The defendant contended that under the law of New Jersey a charitable corporation was not liable to its beneficiaries for damage occasioned by the torts of its servants and that the defendant was a charitable corporation and the plaintiff a beneficiary of the charity. The plaintiff, on the other hand, contended the defendant’s liability to respond in damages for torts of its servants was to be determined by the law of the State of its incorporation, to wit, the State of New York, and that if the liability of the defendant was to be determined by the law of New Jersey, that the law of New Jersey does not grant immunity to charitable corporations organized under the law of a State which does not grant such immunity. The court held, in favor of the plaintiff, that the defendant (a charitable corporation organized under the laws of New York) was not immune from liability for a tort committed in New Jersey and said (pp. 903-905):
“ There remains the question as to whether the New Jersey law grants immunity to charitable corporations for the torts of their servants if the law of the State of incorporation does not grant such immunity. The court has had the benefit of very complete argument and research [referring to the status of the applicable law] from which it appears quite conclusively that the immunity referred to is granted by the law of New Jersey to charitable corporations organised under the laws of that State. It likewise appears that in Kansas and California the immunity was extended to foreign corporations (Webb v. Vought, 127 Kan. 799; 275 P. 170; Young v. Boy Scouts of America, 9 Cal. App. [2d] 760; 51 P. [2d] 191), but it seems that in the place of incorporation of the charitable organization in each of those cases similar immunity was granted at the time. (Hogan v. Chicago Lying-In Hospital, 335 Ill. 42; 166 N. E. 461; Bodenheimer v. Confederate Memorial Assn., 68 F. [2d] 507.) ” (Emphasis supplied.)
* * *
“ The sole decision which has been presented on behalf of the plaintiffs on this question is Matter of Prime (136 N. Y. 347), in which the New York Court of Appeals held that where an exemption was given by statute to charitable corporations from certain taxation, the exemption applied only to domestic and not to foreign corporations, the court saying: ‘We are of opinion that a statute of a State granting powers and privileges to corporations must, in the absence of plain indications *13 to the contrary, be held to apply only to corporations created by the state, and over which it has the power of visitation and control. ’ This decision is, of course, not directly in point since it involves the application of a statute rather than of a rule of common law, but the stress upon the absence of the power of visitation and control is significant. Under the circumstances, it becomes necessary to determine the question upon principle alone. * * *
“ To grant to the defendant the immunity tohich the New Jersey law grants to New Jersey corporations of a similar character would be to confer upon the defendant a privilege ini respect of its operations in New Jersey which it does not have in respect of its operations within the State of New York. It thus appears that upon principle the defendant should have no greater immunity under the laiv of the State of New Jersey than it has under the law of the State of New York, and I accordingly hold that the defendant is not immune from liability as a charitable corporation under the law of New Jersey.” (Emphasis supplied.)
In the case at bar the situation is similar. Defendant is a New York corporation and is not granted immunity by the law of New York, and since the law of Oregon (where the within accident occurred) grants immunity only to Oregon charitable corporations for torts committed in Oregon and since there is no indication that the Oregon courts have held or would hold that a New York charitable corporation was immune from liability for a tort committed in Oregon, where by the law of New York such corporation is not immune from liability for a tort committed in New York, the court is constrained to follow the decision in the Heinemanm case (supra), and to hold that the defendant in the case at bar is not immune from liability in this case. Accordingly, plaintiff’s motion to strike out the defense set forth in paragraph “Seventh” of defendant’s answer for legal insufficiency is granted.
Now, turning to the remaining question posed by the instant motion, the court is called upon to construe and give legal effect to an instrument allegedly executed by plaintiff’s intestate infant daughter (and allegedly joined in by plaintiff) prior to the time she embarked upon the afore-mentioned trip to visit and climb Mt. Hood. The said written agreement provided: ‘ ‘ I agree to abide by hostel customs while on my trip, and to follow all directions provided by American Youth Hostels, Inc. I hereby release American Youth Hostels, Inc., and its agents of any and all responsibility or liability of any nature whatsoever for any loss of property or personal injury occur *14 ring on this trip or any substitute trip under its management. I understand that American Youth Hostels, Inc. acts as an agent only and accepts no responsibility for loss, damage or injury resulting or delay of any kind or negligence of any transportation company, agency or service, or from any other cause whatsoever. I further agree to assume all responsibility for any and all debts incurred by myself during the trip.”
It is defendant’s contention that by reason of the aforesaid agreement, plaintiff released defendant from any and all liability to plaintiff for any and all claims of plaintiff against defendant.
The law is well settled and both parties are in accord that since the said agreement was executed in New York, its validity and construction is governed by the law of the lex loci contractus — New York State. (Straus Co. v. Canadian Pacific Ry. Co., 254 N. Y. 407; New Amsterdam Cas. Co. v. Stecker, 1 A D 2d 629, supra.) Moreover, it is apparent that while the word ‘ ‘ release ’ ’ is used, nevertheless, said instrument is not a true release, but rather a covenant not to sue or an agreement to release a future claim. In the case of Wilder v. Pennsylvania R. R. Co. (245 N. Y. 36, 38), the plaintiff signed a pass issued to her by the defendant railroad reading ‘ ‘ In consideration of the issuance of this free pass, I hereby assume all risks of personal injuries and all loss of or damage to property from whatever causes arising, and release the Company from liability therefor * * The Court of Appeals said (p. 39):
“ The pass had none of the elements of a release. It was an agreement not to sue, made in consideration of the free use of railroad facilities. There was no claim in existence to be released at the time it was given. It spoke for the future, not the present or past. No liability existed, consequently there was none to be released.”
Insofar as plaintiff’s infant daughter was concerned, it is the court’s opinion that the instant agreement to release or covenant not to sue was not binding upon her. It was void or voidable. The general rule of law is that an infant has not the capacity to bind himself absolutely by contracts, since any contract made by him during his infancy may be avoided (Matter of Taylor, 153 Misc. 673). Of course, this rule yields to the exception that, where an infant’s contract is to his benefit, it is good and binding upon him; when it is to his prejudice, it is void; and when it is of an uncertain nature as to benefit or prejudice, it is voidable only at the election of the infant. The infant is regarded as not having sufficient capacity to understand and pass upon questions involving *15 contractual rights, and, therefore, a person dealing with him does so at his peril (see Matter of Farley, 213 N. Y. 15).
In Corpus Juris Secundum (Vol. 43, Infants, § 75, subd. b) the text states (p. 171): “ The general rule is that the right of an infant to avoid or disaffirm his contract is a personal privilege of which no one can take advantage but the infant himself, if living and under no mental or physical disability, or, in case of his death, his privies in blood or heirs or, as considered in Executors and Administrators § 139, his personal representative”. (See, also, 1 Williston on Contracts [Rev. ed.], § 232.)
Corpus Juris Secundum (Vol. 43, Infants, § 76, subd. c, p. 183) states: “Bringing suit on the released claim is a disaffirmance of the release. On disaffirmance the release becomes null and void, and cannot be interposed or insisted on in bar of his rights ”.
In sum, therefore, the commencement of the present action by plaintiff as administrator of his deceased infant daughter constitutes a disaffirmance which renders the covenant not to sue, insofar as signed by said infant, null and void. The fact that plaintiff, as her parent or guardian, may have agreed to the terms or regulations governing the trips sponsored by defendant, adds nothing to the binding force of the agreement because the approval by a parent of his infant child’s contract does not validate it (see 43 C. J. S., Infants, § 71, p. 164). Under such circumstances, it is the court’s view, and it so holds, that the agreement to release or covenant not to sue executed by plaintiff’s 15-year-old daughter is not binding and, having been disaffirmed by the administrator, is void from its inception. Therefore, the defense set forth in paragraph “Ninth” of defendant’s answer, insofar as it is directed to the second cause of action which is the representative cause of action on behalf of the infant’s estate, is insufficient as a matter of law.
What is the effect of the defense under discussion upon plaintiff’s first cause of action? This cause of action is one given by statute to the deceased infant’s father. The action is brought in his own right under section 30.010 of the Oregon Revised Statutes, which states that a father may maintain an action for the death of a child. It is entirely distinct from any that may have been sustained by the infant or her estate in the event of her death and was not derived from nor dependent on any right of action of the infant (see Schleiger v. Northern Term. Co., 43 Ore. 4). Obviously, therefore, the within infant could not release this cause of action since it was never the infant’s to release.
*16 To the extent that the said instrument, allegedly signed by plaintiff, may constitute a bar to the first cause of action, and since defendant in its brief has cited cases indicating that such an anticipatory release or covenant not to sue may constitute, under certain circumstances and conditions, a good defense, it becomes important to examine the scope of this covenant not to sue.
The law seems well settled that courts do not look with favor on attempts to avoid liability for one’s own fault; that such a covenant not to sue is strictly construed against the party asserting it; and that clear and explicit language in the contract is required to absolve a person from such liability. (See 17 C. J. S., Contracts, § 262; cf. Jordan v. City of New York, 3 A D 2d 507; Thompson-Starrett Co. v. Otis Elevator Co., 271 N. Y. 36; Dick v. Sunbright Steam Laundry Corp., 307 N. Y. 422.)
In Boll v. Sharp & Dohme (281 App. Div. 568, 570, affd. 307 N. Y. 646) the court said: “Releases or covenants of this nature have always been scrutinized, and have been enforced with many qualifications. Courts have always hesitated to allow parties to absolve themselves from the obligation to exercise ordinary care in human relationships, by contracting that the operation of the law of negligence shall be suspended in broad areas of conduct. The statement was made at the Appellate Division in an opinion by Hiscock, J., in Johnston v. Fargo (98 App. Div. 436, 442, affd. 184 N. Y. 379), that The general principle that contracts breaking down common-law liability and relieving persons from just penalties for their negligent and improper conduct are not to be favored, and should not be given an enforcement beyond that demanded by their strict construction,- has been announced by the courts with often-repeated reiteration.’ Elsewhere it has been stated that ‘ Contracts exempting from liability for negligence are not favored by the law; they are strictly construed against the party relying on them, and clear and explicit language in the contract is required to absolve a person from such liability.’ (17 C. J. S., Contracts, § 262.) ” (See, also, Bard v. Board of Educ., 140 N. Y. S. 2d 850; Zackby v. Kopell, 144 N. Y. S. 2d 243.)
Reading the instrument in question in the light of the aforementioned acknowledged principle, there is absent the express broad language purporting to exempt the defendant from the consequence of its own negligence as alleged in the complaint. The instrument states (1) that the infant agrees to abide by hostel customs while on her trip and to follow all directions *17 provided by defendant; (2) the infant releases defendant and its agents of any and all responsibility or liability of any nature whatsoever for any loss of property or personal injury occurring on said trip or any substitute trip under its management; (3) that the infant understands that the defendant acts as an agent only and accepts no responsibility for loss, damage or injury resulting or delay of any kind or negligence of any transportation company, agency or service, or from any other cause whatsoever; and (4) that the infant agrees to assume all responsibility for any and all debts incurred by her during the trip.
It is interesting to note that the instrument does not contain any statement that the infant releases the defendant from liability for injuries caused by the defendant’s negligence. The word “negligence” does not appear in said covenant not to sue, except in connection with the negligence of any transportation company, agency or service. There are no precise words in the covenant making it clear that the deceased infant or her parent (plaintiff) exempted defendant from liability for personal injuries caused by defendant’s negligence.
Accordingly, this court holds that the covenant here presented by way of defense and set forth in paragraph “ Ninth ” of the answer, properly construed, does not exculpate defendant from the alleged negligence set forth in both causes of action and must likewise be stricken out because of legal insufficiency.
The court has considered the cases cited by defendant in its brief and finds them inapplicable to this case. These cases were analyzed at length by the dissenting opinion in Boll v. Sharpe & Dohme (281 App. Div. 568, 572-578, supra) but the Court of Appeals (307 N. Y. 646), without opinion, unanimously affirmed the majority opinion of the Appellate Division wherein it was held that the covenant there presented did not exonerate the defendant from the employment of due care or relieve it from negligence. While the majority of the court in Boll v. Sharpe & Dohme (supra) were of the opinion that the order of Special Term denying plaintiff’s motion to strike out the defense of release or covenant not to sue should be affirmed, yet, because of the ambiguity of plaintiff’s complaint regarding the defendant’s negligence and the possible dispute concerning the purpose of the covenant, the court directed that the coverage and validity of the instrument be decided after a trial, at which it could be ascertained precisely how the accident occurred. However, in the case at bar, none is urged, and it is clear that no such problems are presented either by the facts alleged in the complaint or by the instrument itself, and consequently, *18 there is no need to decide any coverage and validity question after trial.
The court by this decision does not pass upon the persuasive argument advanced by plaintiff and the cases cited, by him in his brief that the attempted release or covenant not to sue is void as against public policy because of the public service or quasi-public service being performed by defendant.
Plaintiff’s motion is in all respects granted. Settle order on notice.