**FARGO PUBLIC LIBRARY, Plaintiff and Appellant,**

v.

**CITY OF FARGO URBAN RENEWAL AGENCY, Defendant and Respondent.**

No. 8574.

Supreme Court of North Dakota.

March 30, 1971.

Tenneson, Serkland, Lundberg & Erickson, Fargo, for appellant.

Wattam, Vogel, Vogel & Peterson, Fargo, for respondent.

KNUDSON, Judge.

This is an appeal from the judgment dismissing the plaintiff's action.

The Fargo Public Library entered into a written contract with the City of Fargo Urban Renewal Agency on June 8, 1961, after several months of negotiations, for the purchase of a tract of land within the Project Area of the North Dakota R–1 Urban Renewal Project located in an area in the city of Fargo, North Dakota, for the purpose of constructing a library building thereon.

As a part of said contract, by addendum, the Public Library was permitted to redevelop this property or lease it for the purpose of off-street parking, with the intention to eventually construct a library building on the property, but without any requirements as to the time of the beginning or completion of the construction of the library building.

A deed to the property, dated June 20, 1961, was subsequently executed by the Renewal Agency and delivered to the Public Library conveying the property to the Public Library. The contract was a printed form prepared by the Renewal Agency and used by it in its transactions with Public Library and others who desired to purchase tracts within the Project Area for the purpose of development under a program for the clearance and reconstruction of slum and blighted areas in the city of Fargo.

Some time prior to the making of this contract, three buildings wholly or partly upon the purchased property, known as the Berry Building, the Flamer Hotel and the Cliquot Club, were demolished by the Renewal Agency by a contractor during the course of the fall of 1960 and the winter of 1961, with the final payment to the contractor who demolished the buildings made in May of 1961. At the time the Public Library entered into the contract for the purchase of the property the old buildings had been demolished and the property had been leveled and graded to the surface of the surrounding property.

The property was thereafter used as a parking lot until April of 1967, when the first excavation was made for the footings and foundations for the construction of the library building. After removing a foot or two of topsoil, the contractor found that rubble and debris of brick, concrete, rotting wood, reinforcing rods, and other matter, had been used as backfill in the basements of the old Berry Building, Flamer Hotel and Cliquot Club.

The plans for the library building called for a floating concrete slab poured on top of the ground as the first floor, with footings and foundation designed to hold the walls and roof structure. The type of building called for in the plans could not be built on the property without removal of this rubble and debris. Therefore, it was necessary to remove the rubble and backfill the basements with proper material.

Within a few days after the discovery of the rubble and debris in the basements of the old buildings, a member of the Public Library brought this matter of the rubble and debris in the basements to the attention of the executive secretary of the Renewal Agency, and inquired what the Renewal Agency was going to do about the removal of the rubble and debris. As the Renewal Agency made no effort to proceed to remove the rubble and debris and to backfill with the proper material, the Public Library caused the contractor for the construction of the library building to remove the rubble and debris from the basements of the razed buildings and to backfill with the proper material.

The Public Library, on June 2, 1967, sent a letter to the Renewal Agency demanding reimbursement for the cost of removing the rubble and debris and for the backfilling with a clean, well-compacted fill, estimated at the sum of thirty-five to forty thousand dollars, for the failure of the Renewal Agency to comply with the

provisions of the contract relating to the removal of the rubble and debris from the demolished buildings. On June 5, 1967, the Public Library brought this action against the Renewal Agency demanding damages of $40,000 for breach of contract for the failure of the Renewal Agency to remove the rubble and debris from the property and for failing to backfill with proper material, as required by the contract.

At the opening of the trial of the case to the court, the Renewal Agency made a motion to dismiss the Public Library's action on the grounds that the complaint failed to state a cause of action; that the parties to the contract knew that the buildings already had been razed and the basements already had been backfilled and leveled to grade; and for a further reason that in a previous case in the Cass County district court, before the Honorable Roy K. Redetzke, Judge, between the Fargo Chamber of Commerce and the Urban Renewal Agency, involving and construing the same form of contract, the court had held that the Renewal Agency was required only to remove and demolish the buildings down to the grade of the surrounding property. The motion was denied with leave to the Renewal Agency to renew the motion at a later time.

At the close of the presentation by the Public Library of its evidence, the Renewal Agency renewed its motion for a dismissal of the case upon the same grounds as in the original motion.

Judge Maxwell said he was unable to distinguish between the *Chamber of Commerce* case and the present case, as each, in his opinion, was based on substantially the same facts and on exactly the same language in the same form of contract. He was of the opinion that the decision by Judge Redetzke in the *Chamber of Commerce* case interpreting the same provisions in the same form of contract was precedent for the present case and deprived him of discretion in the matter under the principle of stare decisis. He observed that Judge Redetzke, in the *Chamber of Commerce* case, considered together subparagraph (i) of paragraph 2(a) and subparagraph (iii) of paragraph 2(a) of the contract common to each case in rendering his decision absolving the Renewal Agency of liability in that case.

Judge Maxwell expressed the opinion that under the doctrine of stare decisis he was bound to follow decisions of courts of the same stature or level as well as decisions of appellate courts. Therefore, applying the rule in the *Chamber of Commerce* case to this case, he found that the Public Library had not made out a prima facie case of breach of contract by the Renewal Agency. He further found that written notice of default had not been given prior to the commencement of this action, as required by the provisions of the contract, and that such notice was a condition precedent to bringing the action, without which the action would fall. Judgment was entered accordingly, dismissing the plaintiff's action.

Although the trial court rendered its decision on the principle of stare decisis and followed the decision of a court of equal rank, we are not bound by such decision, and we will proceed to a determination of this case without considering the decision of the trial court as precedent binding on this court.

Generally, stare decisis effect is not given to a decision of a court lower in rank than the court in which the decision is cited as a precedent. 20 Am.Jur.2d Courts § 201.

The principle of stare decisis is most frequently applied or discussed with regard to decisions made by a court of last resort in the given jurisdiction. *Idem.*

The decisions of inferior courts are not, as a rule, binding on the higher courts, even as establishing the law of the case, although it has been considered that an appellate court will give great weight to the

opinions of a lower court upon questions affecting its own practice and jurisdiction, and may consider the decision of such a court on other matters in the absence of any authoritative precedent. 21 C.J.S. Courts § 201, p. 352.

The decisions of lower courts are not binding upon appellate courts. State Board of Equalization v. Courtesy Motors, Inc., 362 P.2d 134, 135 (Wyo.1961); In re Seaman's Estate, 166 Ohio St. 51, 139 N. E.2d 17 (1956); City of Sedalia v. Donohue, 190 Mo. 407, 89 S.W. 386, 4 Ann.Cas. 89 (1905); Ferguson v. Koch, 204 Cal. 342, 268 P. 342, 58 A.L.R. 1176 (1928); Joseph v. Schatzkin, 259 N.Y. 241, 181 N. E. 464, 83 A.L.R. 910 (1932), cited in 20 Am.Jur.2d Courts § 201.

Although the Public Library made several specifications of error and raised several issues, these specifications and issues may be reduced to two issues:

1. Whether the Public Library may be relieved from the provisions of the contract calling for written notice to be given of any default or breach of the contract as a condition precedent to the bringing of any action for the failure to cure or remedy such default or breach within sixty days after receipt of such notice.

2. Whether the Renewal Agency was required under the terms of the contract to remove from the property the debris from the demolished buildings and by its failure to do so had breached the contract, for which breach it was liable to the Public Library in damages.

■ We will consider the issue whether or not the Public Library was relieved from giving the notice of the default or breach of the terms of the contract as a condition precedent to bringing this action for damages for the failure of the Renewal Agency to cure or remedy the default or breach within sixty days of such notice, the Renewal Agency having indicated that it would not do anything to remove the debris deposited in the basements.

The Renewal Agency had prior knowledge of the debris deposited in the basements of the razed buildings before the contract with the Public Library was entered into for the sale of the property to the Public Library. The minutes of the Renewal Agency of the meeting held February 1, 1961, disclose that at that time the Renewal Agency not only had knowledge that the contractor having the contract to demolish the three buildings had deposited steel, concrete and other debris from the demolished buildings in the basement openings, but did so with the consent of the Renewal Agency.

We conclude from these facts establishing the prior knowledge of the Renewal Agency of the debris deposited in the basement openings, and its refusal or indication that it would not remove the debris, that it had waived the requirement in the contract of a notice in writing of the default or breach. The notice of default or breach was required by the contract to be given in writing to give the Renewal Agency sixty days in which to cure or remedy the default or breach. This requirement was waived by the Renewal Agency.

■ A written notice of any default or breach calling for or demanding that the other party proceed immediately to cure or remedy such default or breach, in a contract requiring such notice, may be waived. 17 Am.Jur.2d Contracts § 356.

■ In 17 Am.Jur.2d Contracts § 392 the text writer states:

Conditions precedent may be waived by the party in whose favor they are made. The performance of a condition precedent may be waived, by the party in whose favor it is stipulated, either expressly or by implication resulting from his acts or conduct. "Waiver," when used in connection with the required performance of a condition, has its usual

meaning of a voluntary and intentional relinquishment of a known right. Accordingly, one waives the performance of a condition and cannot rely on it to prevent recovery where its nonperformance is caused or consented to by him. and cites,

The performance of a condition precedent is waived where the other party has unequivocally declared by word or act that performance of the condition will not secure performance of the counterpromise. Kotcher v. Edelblute, 250 N.Y. 178, 164 N.E. 897.

■ And in Southern Materials Co. v. Bryan Rock and Sand Co., 308 F.2d 414, 418 (4th Cir. 1962), the Court said:

It is well settled that no demand for the performance of a contract is necessary to give rise to an obligation to perform when there has been a refusal in advance to comply with the terms of the agreement, 12 Am.Jur. Contracts § 331; 17 C.J.S. Contracts § 478; Restatement of Contracts, § 306.

We also held in McCaull-Webster Elevator Co. v. Stiles, 41 N.D. 135, 169 N.W. 577 (1918), such notice is not necessary where the demand would have been futile. The giving of such notice would have been a useless formality.

■ A party to a contract may not be required to perform a condition precedent amounting to a vain and futile act in order to enforce a promise, as where the promisor refuses to comply with his obligation. 17A C.J.S. Contracts § 456, p. 479.

It is well established that the law does not require a useless act. Quam v. City of Fargo, 77 N.D. 333, 43 N.W.2d 292 (1950). Subsection 23 of § 31-11-05, North Dakota Century Code, states, "The law neither does nor requires idle acts."

It is an old maxim of the law that it compels no man to do a useless act, and this principle has been applied to the case of a conditional promise. If the promisor is not going to keep his promise in any event, it is useless to perform the condition and the promisor becomes liable without such performance. So if before the time for the performance of a condition by a promisee, the promisor leads the promisee to stop performance by himself manifesting an intention not to perform on his part, even though the condition is complied with, "it is not necessary for the first to go further and do the nugatory act."

Williston on Contracts § 699 (3rd ed. 1961).

In this case it would have been fruitless for the Public Library to have given the sixty-day notice when the Renewal Agency had indicated it would not remove the rubble and debris.

■ We will next consider whether the Renewal Agency was required, under the terms of the contract, to remove the debris from the property, and by its failure to do so had breached the contract and was liable to the Public Library in damages for such breach.

To determine this issue we must look to the contract to find whether the contract requires the Renewal Agency to prepare the property for the purposes of the Public Library by the removal of the debris from the buildings that were demolished. If the contract did require the Renewal Agency to remove from the property the debris from the buildings that were demolished, and further required that the basement openings be backfilled with the proper material, then the Renewal Agency, by permitting the debris to be deposited and buried in the basement openings, was in default and in breach of the contract, and the Public Library would be entitled to recover from the Renewal Agency the cost of the removal of such rubble and debris from the property.

In order to determine whether such liability rests upon the Renewal Agency it will be necessary to interpret the provi-

sions of the contract which we have set forth above.

Our statutes are explicit in interpreting a contract. The rules for interpreting a contract are simple.

The language of a contract is to govern its interpretation if the language is clear and explicit * * *.

Section 9–07–02, N.D.C.C.

A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable and lawful. For the purpose of ascertaining the intention of the parties to a contract, if otherwise doubtful, the rules given in this chapter are to be applied.

Section 9–07–03, N.D.C.C.

The whole of a contract is to be taken together so as to give effect to every part if reasonably practical. * * *

Section 9–07–06, N.D.C.C.

This contract was a printed form used by the Renewal Agency for the sale of property within the renewal area with others, as well as with the Public Library, who wished to redevelop certain parts of the area under the urban renewal program in which the city of Fargo, through the Renewal Agency, was redeveloping. This property was a part of a larger plan to redevelop blighted and slum areas in Fargo. The Renewal Agency had undertaken to remove and demolish existing buildings, structures and obstructions on the property, including the removal of any debris resulting from such demolition, and put the land into shape for redevelopment by redevelopers, including the Public Library.

The district court determined that the Renewal Agency was not required to remove the debris under the provisions of the contract, paragraph 2(a) and subparagraphs thereunder, (i) and (iii), "taken together."

Paragraph 2(a) provided that the Renewal Agency shall, *prior to conveyance of the property and without expense to the redeveloper, prepare the property for purposes of the redevelopment thereof by the redeveloper* (Public Library), and that such preparation shall consist of [ (i) ] the demolition and removal to grade of all existing buildings, structures, and obstructions on the property, *including the removal of any debris resulting from such demolition*; and [(iii)] such filing and grading and leveling of the land as shall be necessary to make it ready for construction of the improvements to be made thereon by the redeveloper.

We do not agree with the interpretation placed upon these provisions in the contract by the district court. These provisions provide that the Agency prior to the conveyance of the property, shall prepare the property for the purposes of redevelopment by demolishing all existing buildings, and removing all debris resulting from such demolition, and to fill and grade the land "as shall be necessary to make it ready for construction of the improvements to be made thereon by the redeveloper."

And this provision also provides that all expenses relating to buildings or structures demolished or to be demolished shall be borne by, and any income or salvage received from such buildings or structures shall belong to the Agency.

Applying the rules of law set forth applicable to the interpretation of contracts, it appears, and we so hold, that the Renewal Agency was required to remove from the premises the debris from the buildings that were demolished and to backfill the basement openings with proper material to make it ready for the construction of the improvements to be made thereon by the Public Library.

The contract sets forth the obligation of the Renewal Agency to make the property ready for construction of the improvements to be made thereon by the redeveloper by the demolition of the existing buildings and

the removal of the debris resulting therefrom under a program for the clearance and reconstruction of slum and blighted areas in the city of Fargo.

Under the paragraph entitled *Recitals,* we read:

[T]he Agency has undertaken a program for the clearance and reconstruction of slum and blighted areas in the City of Fargo * * *.

Then, in the next paragraph of the contract:

[T]he Agency has prepared * * * a plan (herein called "the Urban Renewal Plan") providing for the clearance and redevelopment of the Project Area and the future uses of the land comprising such Area.

In the next paragraph it is said:

[I]n order to enable the Agency to achieve the objectives of the Urban Renewal Plan, and particularly to make the land in the Project Area available (after acquisition and clearance by the Agency) for redevelopment * * *.

And, in paragraph 2(a) the Agency is enjoined to prepare the property for purposes of the redevelopment by subparagraph (i), "the demolition and removal to grade of all existing buildings, structures, and obstructions on the Property, including the removal of any debris resulting from such demolition;" and, in subparagraph (iii), "such filling and grading and leveling of the land * * * as shall be necessary to make it ready for construction of the improvements to be made thereon by the Redeveloper (it being intended that such filling, grading and leveling conform generally to the respective surface elevations of the land prior to the demolition of the buildings and structures thereon)." We hold that these provisions of the contract set forth the obligation of the Renewal Agency to demolish the existing buildings, remove from the property the debris resulting from such demolition, and to make such property ready for the construction of the improvements to be made thereon by the Public Library.

We find that the Public Library has met its burden of proving a prima facie case, and we reverse the judgment of dismissal and remand the case to the district court for further proceedings to permit the Renewal Agency to offer evidence to rebut the prima facie case made by the Public Library.

Judgment reversed and case remanded for further proceedings in accordance with the directions in this opinion.

STRUTZ, C. J., and PAULSON, ERICKSTAD and TEIGEN, JJ.