Jasen, J.
(dissenting). Since I believe that the interests of society and this State in protecting its children must be placed above any concern for trade or commercialism, I am compelled to dissent. The State has the right and indeed the obligation to afford extraordinary protection to minors.
At the outset, it should be made clear that this case does not involve the undoing of a written consent given by a mother to invade her infant daughter’s privacy so as to affect prior benefits derived by a person relying on the validity of the consent pursuant to sections 50 and 51 of the Civil Rights Law. Rather, what is involved is the right of an infant, now 17 years of age, to disaffirm her mother’s consent with respect to future use of a nude photograph taken of her at age 10.
The majority holds, as a matter of law, not only in this case but as to all present and future consents executed by parents on behalf of children pursuant to sections 50 and 51 of the Civil Rights Law, that once a parent consents to the invasion of privacy of a child, the child is forever bound by that consent and may never disaffirm the continued invasion of his or her privacy, even where the continued invasion of the child’s privacy may cause the child enormous embarrassment, distress and humiliation.
I find this difficult to accept as a rational rule of law, particularly so when one considers that it has long been *348 the rule in this State that a minor enjoys an almost absolute right to disaffirm a contract entered into either by the minor or by the minor’s parent on behalf of the minor (Sternlieb v Normandie Nat. Securities Corp., 263 NY 245; Joseph v Schatzkin, 259 NY 241; International Text Book Co. v Connelly, 206 NY 188; Rice v Butler, 160 NY 578; Sparman v Keim, 83 NY 245; Green v Green, 69 NY 553) and the statute in question does not in any manner abrogate this salutary right.
This right has been upheld despite the fact that the minor held himself out to be an adult (Sternlieb v Normandie Nat. Securities Corp., supra) or that a parent also attempted to contractually bind the minor (Kaufman v American Youth Hostels, 13 Misc 2d 8, mod on other grounds 6 AD2d 223, mod and certified question answered in negative 5 NY2d 1016). Significantly, whether or not the minor can restore the other contracting party to the position he was in prior to entering the contract is pertinent only to the extent that the minor, by disaffirming the contract, cannot put himself into a better position than he was in before entering the contract. (Sternlieb v Normandie Nat. Securities Corp,, supra; Rice v Butler, supra,) In the past, this court has noted that those who contract with minors do so at their own peril. (Joseph v Schatzkin, supra, at p 243.)
Understandably, such a broad right has evolved as a result of the State’s policy to provide children with as much protection as possible against being taken advantage of or exploited by adults. “The right to rescind is a legal right established for the protection of the infant” (Green v Green, supra, at p 556). This right is founded in the legal concept that an infant is incapable of contracting because he does not understand the scope of his rights and he cannot appreciate the consequences and ramifications of his decisions. Furthermore, it is feared that as an infant he may well be under the complete influence of an adult or may be unable to act in any manner which would allow him to defend his rights and interests. (28 NY Jur, Infants, § 3, pp 221-222.) Allowing a minor the right to disaffirm a contract is merely one way the common law developed to *349 resolve those inequities and afford children the protection they require to compensate for their immaturity.
Can there be any question that the State has a compelling interest in protecting children? Indeed, the most priceless possessions we have in the Nation are our children. Recognizing this compelling interest in children, the State has assumed the role of parens patriae, undertaking with that role the responsibility of protecting children from their own inexperience. Acting in that capacity, the State has put the interests of minors above that of adults, organizations or businesses. (Rice v Butler, supra; Kaufman v American Youth Hostels, supra; Sternlieb v Normandie Nat. Securities Corp., supra.) The broad right given a minor to disaffirm a contract is, of course, an obvious example of the State’s attempt to afford an infant protection against exploitation by adults. (28 NY Jur, Infants, op. cit.) Thus, I am persuaded that, in this case, 17-year-old Brooke Shields should be afforded the right to disaffirm her mother’s consent to use a photograph of her in the nude, taken when she was 10 years old, unless it can be said, as the majority holds, that the Legislature intended to abrogate that right when it enacted sections 50 and 51 of the Civil Rights Law.
The legislative history of this statute enacted in the early 1900’s is understandably scarce. The case law prior to its passage, however, indicates that a minor’s right to disaffirm a contract under the common law was well established at that time. Additionally, it is well accepted that this statute was enacted in response to this court’s decision in Roberson v Rochester Folding Box Co. (171 NY 538; see, also, Arrington v New York Times Co., 55 NY2d 433, 439) in which the court held that a minor had no recourse against an entrepreneur who made commercial use out of her picture without her consent. Apparently, in order to alleviate litigation over whether or not consent had been given, the Legislature required that such consent be in writing and, if the person was a minor, that the parent sign the consent form. There is no indication that by requiring consent from the minor’s parents, the Legislature intended in any way to abrogate that minor’s right to disaffirm a contract at some future date. Indeed, the requirement of *350 parental consent, like the broad right to»disaffirm a contract, was granted in order to afford the minor as much protection against exploitation as possible. The assumption, of course, was that a parent would protect the child’s interests. But if that assumption proves invalid, as may well be the case if a minor upon reaching the age of maturity realizes that the parent, too, has been exploiting him or her or had failed to adequately guard his or her interest by giving consent for pictures which caused humiliation, embarrassment and distress, then the child should be able to cure the problem by disaffirming the parent’s consent. To say, as does the majority, that the mother could have limited her consent avoids the issue. If the parent has failed to put any restrictions on the consent, as occurred in this case, and has thus failed to protect the child’s future interests, I see no reason why the child must continue to bear the burden imposed by her mother’s bad judgment. This means the child is forever bound by its parent’s decisions, even if those decisions turn out to have been exploitative of the child and detrimental to the child’s best interests.
Furthermore, nothing compels the majority’s conclusion that the right to disaffirm a contract was eliminated when the Legislature created a new cause of action for invasion of privacy merely because that statute provided safeguards for the child’s privacy by giving the parent the right to grant or withhold consent. When both rights are viewed, as I believe they must be, as protection for the child, logic and policy compels the conclusion that the two rights should exist coextensively. The requirement that a parent consent before the child’s privacy can be invaded by commercial interests establishes the parent as the first guardian of the child’s interest. But the State retains its long-standing role of parens patriae so that if the parent fails to protect the child’s interests, the State will intervene and do so. One means of doing so is to allow the child to exercise its right to disaffirm if the child concludes that its parent improvidently consented to the invasion of the child’s privacy interests. Given the strong policy concern of the State in *351 the child’s best interests,* I can only conclude that the Legislature did not intend to abrogate the child’s common-law right to disaffirm a contract when it required, by statute, the additional protection of written, parental consent prior to any commercial use of the child’s image.
This conclusion is further supported by other statutes in which the Legislature has clearly abrogated the infant’s right to disaffirm a contract in those situations in which it has determined that the damage incurred by the minor will be minimal and the cost to the contracting party or society would be great. Invariably, these are contractual situations in which the minor has incurred a contractual obligation in order to receive a benefit which cannot be deemed anything other than a benefit. For example, section 281 of the Education Law negates a minor’s right to disaffirm a contract when that contract afforded him a student loan to pursue an advanced education. (See, also, General Obligations Law, § 3-103.) No one can argue that the contract was anything other than beneficial to the minor. Such legislation was endorsed by the Law Revision Commission on the basis of a legislative finding “that the type of contract involved is clearly for the benefit of the infant”. (1961 Report of NY Law Rev Comm, pp 269, 275, citing Touster, Contracts Relating to the Services of Talented Minors and the Treatment of Their Earnings Therefrom.)
Two factors distinguish sections 50 and 51 of the Civil Rights Law from those statutory provisions which do, in certain contexts, abolish the minor’s right to disaffirm a contract. The first is that in all cases when the Legislature *352 has intended to do so, they have made their intention clear by specific language which directly refers to the infant’s common-law right. The absence of any reference in the Civil Rights Law to the minor’s right to disaffirm a contract, especially when it is clear that the right to disaffirm was well established, indicates that the Legislature did not intend to affect that right. Secondly, unlike the other kinds of contracts which the Legislature has designated as immune from the minor’s right to disaffirm, it cannot be said that a contract releasing all rights to photographs or even limited rights to those pictures is necessarily beneficial to the infant. This is even more true when the pictures, as in this case, are of the variety which can be exploited in the future or used in publications of questionable taste.
I do not believe that the Legislature’s intent in enacting sections 50 and 51 of the Civil Rights Law was to elevate the interests of business and commercialism above the State’s interest in protecting its children. Since this statute was enacted in response to this court’s decision in Roberson v Rochester Folding Box Co. (supra), which denied an infant plaintiff any recovery for the invasion of her privacy by a commercial enterprise in using her picture without her consent, it would seem to me that the legislative intent was to expand individual protections, rather than to afford protection to commercial enterprises.
The fact that when an infant disaffirms a contract there may be harsh results to the person or commercial enterprise attempting to exploit the child has never caused the courts to alter the scope of the protection that right affords the child. The overriding interest of society in protecting its children has long been held to outweigh the interests of merchants who attempt to contract with children. (Sternlieb v Normandie Nat. Securities Corp., supra, at p 250.)
In those situations in which the Legislature has decided that business ventures need additional protection, it has done so not merely by abolishing the infant’s right to disaffirm, but, rather, by providing alternative protection. Section 3-105 of the General Obligations Law provides for judicial approval of contracts for the services of child performers or professional athletes. It is clear that the *353 statute protects not only the business interests which are investing in and profiting from the child’s talents, but also the child. For instance, paragraph d of subdivision 2 generally restricts such contracts to a three-year period and paragraph e of subdivision 2 provides that even after approving a contract of a child performer, the court may, if it finds that the child’s well-being is in any way being impaired by its performance under the contract, revoke or modify the contract so as to protect the child. Similarly, it provides for supervision by the court of the child’s earnings to assure that the child will benefit from his labors. The clear intent of such provisions is to protect the child against any exploitation. The failure of the Legislature to cover child models in this provision indicates to me that they intended child models to retain the protections afforded by the common-law right to disaffirm a contract. It is unfortunate that by virtue of the majority’s interpretation of the Civil Rights Law those children may not in the future be afforded protection against exploitation by their own parents.
It is even more unfortunate that by its interpretation of sections 50 and 51 the majority takes away a large part of the protection those children had at common law.
Chief Judge Cooke and Judges Jones and Wachtler concur with Judge Simons; Judge Jasen dissents in part and votes to affirm in a separate opinion in which Judges Fuchsberg and Meyer concur.
Order modified, with costs to defendant, in accordance with the opinion herein and, as so modified, affirmed.

 The discussion in this opinion of the policy behind affording a child the extraordinary protection of the right to disaffirm a contract should not be read, as the majority does, to equate the right to disaffirm with the principle that a court will refuse to enforce contracts which violate public policy. Indeed, had the courts below found that her mother had contracted for her daughter to pose in an obscene manner or that the photographs were obscene or pornographic, then we would not need to decide the applicability of the infant’s right to disaffirm that contract as I assume the majority would find the contract and the consent incorporated in it to violate public policy. (Penal Law, § 235.00 et seq.; People v Ferber, 52 NY2d 674 [Jasen, J., dissenting], revd 458 US_, 102 S Ct 3348, on remand 57 NY2d 256.) A contract held to be unenforceable because it violates public policy is void ab initio and, thus, there is no need to consider whether or not it may be disaffirmed.