OPINION OF THE COURT
Matthew F. Coppola, J.
In this case of first impression, an infant actor has disaffirmed a personal services contract. He thereby seeks to avoid *263 responsibility to his manager for commissions due in the future on income from performance contracts already obtained for him by the manager.
The salient facts are not in dispute. In 1984, when defendant Andrew M. Kavovit was 12 years of age, he and his defendant parents entered into a contract with plaintiffs (Scott Eden) whereby Scott Eden became the exclusive personal manager to supervise and promote Andrew’s career in the entertainment industry. This agreement ran from February 8, 1984 to February 8, 1986 with an extension for another three years to February 8, 1989. It provided that Scott Eden was entitled to a 15% commission on Andrew’s gross compensation. "With respect to contracts entered into by [Andrew] * * * during the term of this agreement * * * [Scott Eden] shall be entitled to [its] commission from the residuals or royalties of such contracts, the full term of such contracts, including all extensions or renewals thereof, notwithstanding the earlier termination of this agreement.”
In 1986, Andrew signed an agency contract with the Andreadis Agency, a licensed agent selected by Scott Eden pursuant to industry requirements. This involved an additional 10% commission. Thereafter, Andrew signed several contracts for his services. The most important contract, from a financial and career point of view, secured a role for Andrew on "As the World Turns,” a long-running television soap opera. Income from this employment contract appears to have commenced on December 28, 1987 and continues through December 28, 1990, with a strong possibility for renewal.
One week before the contract with Scott Eden was to expire, Andrew’s attorney notified Scott Eden that his "clients hereby disaffirm the contract on the grounds [sic] of infancy”. Up until then, the Andreadis Agency had been forwarding Scott Eden its commissions, but by letter of February 4, 1989, Andrew’s father, David Kavovit, advised Andreadis that Andrew’s salary would go directly to Andrew and that he would send Andreadis its 10%. Needless to say, no further commissions were sent to Scott Eden.
The complaint seeks money damages for (1) all sums due plaintiffs for commissions relating to Andrew’s personal appearances prior to February 8, 1989, the date of disaffirmance, (2) all sums due plaintiff for commissions with respect to contracts entered into by Andrew in the entertainment or promotion fields during the term of his contract with plain *264 tiffs, "i.e., commissions from the residuals or royalties of such contracts — the full term of such contracts — including all extensions or renewals thereof’, and (3) $50,000 for tortious interference with the relationship between plaintiff and the Andreadis Agency.
Issue was joined and examinations before trial were held. Defendants have now brought this motion for summary judgment upon the ground that no genuine, triable issues exist.
An infant’s contract is voidable and the infant has an absolute right to disaffirm (General Obligations Law § 3-101; Continental Natl. Bank v Strauss, 137 NY 148; Casey v Kastel, 237 NY 305; Joseph v Schatzkin, 259 NY 241; and see, General Obligations Law § 3-107 [with regard to the absence of parental liability either as parties or guarantors]). This aspect of the law of contracts was well entrenched in the common law as early as the 15th century (2 Williston, Contracts § 223 [3d ed]). In bringing this action, and defending the motion, plaintiffs fully recognize the principle of law involved here and in no way challenge the infant’s right to disaffirm. Rather, plaintiffs rely upon a corollary to the main rule, which also evolved early in the common law "After disaffirmance, the infant is not entitled to be put in a position superior to such a one as he would have occupied if he had never entered into his voidable agreement. He is not entitled to retain an advantage from a transaction which he repudiates. 'The privilege of infancy is to be used as a shield and not as a sword.’ (Kent, vol. 2, p. 240; Rice v. Butler, 150 N. Y. 578.)” (Joseph v Schatzkin, 259 NY 241, 244, supra.)
As stated differently by the same court in an earlier case involving an infant’s disaffirmance: "The theory of a rescission is that the party proceeded against shall be restored to his original position. The plaintiff cannot rescind if he retains in himself or withholds through another any fruit of the contract.” (Francis v New York & Brooklyn El. R. R. Co., 108 NY 93, 97.)
The restoration of consideration requirement found voice in CPLR 3004 which states that the infant need not tender restoration of benefits received prior to disaffirmance "but the court may make a tender of restoration a condition of its judgment, and may otherwise in its judgment so adjust the equities between the parties that unjust enrichment is avoided.” (See, 2 Williston, Contracts § 238 [3d ed] [especially n 9, as to the apparent historical setting of this provision].)
*265 The restoration of consideration principle, as interpreted by the courts, has resulted in the infant being responsible for wear and tear on the goods returned by him (Myers v Hurley Motor Co., 273 US 18 [automobile]; Rice v Butler, 160 NY 578 [bicycle]; Scalone v Talley Motors, 3 AD2d 674 [automobile]). In the event that the minor cannot return the benefits obtained, he is effectively precluded from disaffirming the contract in order to get back the consideration he has given. In Vichnes v Transcontinental & W. Air (173 Misc 631) the infant paid the air fare from New York to Los Angeles. On returning to New York she demanded the return of her money. Appellate Term granted summary judgment to defendant because "there is no basis for rescission here in view of the concession that the reasonable value of the transportation was the sum paid by plaintiff” (supra, at 631).
The parties have not cited, nor has the court found, a case dealing with the exact issue at bar, i.e., whether disaffirmance may void the contractual obligation to pay agents’ commissions without any concomitant exchange being made. However, an analogy may be drawn from the case of Mutual Milk & Cream Co. v Prigge (112 App Div 652). There, a minor had entered the employ of the plaintiff as a milk wagon driver and had signed a contract which included a restrictive covenant wherein the minor agreed not to solicit plaintiffs customers within three years after leaving plaintiffs employ. Several months after entering into the contract, the minor quit, pursuant to the terms of the contract, but then went to work for plaintiffs rival and solicited business from plaintiff’s customers.
The Appellate Division affirmed the issuance of an injunction against the minor, who had pleaded infancy in avoidance of the contractual obligations. The court considered that the issue was not one of liability of an infant for a breach of his contract, but whether an infant should be allowed to repudiate his contract without restoring what he had received and, if restoration could not be made, without being enjoined from making use of the information he had gained from his employment by the plaintiff to the latter’s damage. The court held that the infant should be enjoined "from making use of that information in violation of his agreement made at the time when he desired and obtained employment and upon the faith of which he obtained the information and acquaintance.” (Supra, at 654.) The court further noted that "No man would engage the services of an infant if he could not impose the *266 same condition for his own protection against the use of his formulas, trade secrets," and lists of customers that he could exact of an adult.” (Supra, at 654.)
The rationale of the Mutual Milk case (supra) is applicable to this case. The work a personal manager does for and with his client is preparatory to the performance contract. Once a performance contract has been signed, the personal manager is entitled to his percentage fee, subject only to the condition subsequent that the client performs and earns his fee. This is clearly the understanding in the industry, unlike, for example, the standard in the insurance field where the initial commission is disproportionately high and the subsequent, smaller commissions are viewed as consideration for continued efforts in keeping the insurance contract current. When the client signs a performance contract, it is with the understanding that the gross amount to be paid is not solely for him. It is the expectation of all parties — the agent, the performer and, in this case, the soap opera production company, that 15% of that gross amount belongs to the personal manager. To the extent that the performer obtains that 15% for himself, he is unjustly enriched.
Here, the position adopted by defendants is no different than that advanced on behalf of the infant who had taken the airplane ride and wanted her money back or the truck driver who had milked his employer’s efforts and tutelage and then refused to honor his reciprocal commitment. In each case, the infant consumed the fruits of the contract and refused to pay for that fruit, to the clear prejudice of the other party. In this case, the infant will continue to reap the benefits of his contract with plaintiff but is using his infancy as an excuse not to honor the promise made in return for that benefit.
If the argument asserted by defendants were adopted by the court, the infant would be put in a position superior to that which he would have occupied had he never entered into the contract with plaintiff. He would be retaining an advantage from the repudiated transaction, i.e., using the privilege of infancy as a sword rather than a shield. Not only is this manifestly unfair, but it would undermine the policy underlying the rule allowing disaffirmance. If the infant may rescind the contract with the manager immediately after a lucrative performance contract is signed, yet still retain the benefits of the performance contract, no reputable manager will expend any efforts on behalf of an infant.
*267 In this case, adjustment of the equities so as to prevent unjust enrichment, as suggested by CPLR 3004, leads to the conclusion that defendants must continue to pay to plaintiffs all commissions to which plaintiffs would be entitled under their contract, as they become due. Thus, on the first two causes of action summary judgment is denied to defendants and is granted to plaintiffs to the extent that they shall be restored to their original condition. Moreover, inasmuch as plaintiffs will no longer be involved in the day-to-day personal management of the infant, they will be entitled to periodic statements regarding Andrew’s income and the sources thereof and they shall have the right to annual inspections of the books and records kept with regard to Andrew’s income.
The third cause of action is dismissed. Plaintiffs have come forward with no proof to buttress their conclusory claim that defendants have tortiously interfered with their business relationship with the Andreadis Agency.
The court notes that this entire situation may have arisen due to a misreading of a statute which is related to the problem at hand but irrelevant to its determination. The affidavit of David J. Kavovit makes reference to Arts and Cultural Affairs Law § 35.03 as a bar to this action and that "I am advised that the agreement was void at its inception by reason of the fact that its term, including options to extend, exceeded a three year period of time.”
Section 35.03 (formerly General Obligations Law § 3-105, formerly Domestic Relations Law § 74) provides for judicial approval of infants’ contracts in order to avoid later disaffirmance. However, no such contract may be approved if it extends for a period of more than three years, whether by option or otherwise. However, the purpose of the statute was to limit the infant’s right to disaffirm. If there is no judicial approval, for whatever reason, then the statute has no effect upon the infant’s contract or upon his right to disaffirm (Matter of Prinze, 38 NY2d 570).