William Michael JONES, Petitioner,

v.

Cecil D. DRESSEL, Zita A. Dressel, Robert L. Clark, Flightcraft, Inc., and Free Flight Sport Aviation, Inc., Respondents.

No. C–1637.

Supreme Court of Colorado, En Banc.

Jan. 5, 1981.

As Modified on Denial of Rehearing Feb. 23, 1981.

L. B. Ullstrom, Edward J. Rau, Thomas J. Byrne, Denver, for petitioner.

Weller, Friedrich, Hickisch & Hazlitt, Donald Lawrence and Paul D. Renner, Denver, for respondents.

ERICKSON, Justice.

We granted certiorari to review the decision in *Jones v. Dressel*, 40 Colo.App. 459, 582 P.2d 1057 (1978). In an action for damages by the plaintiff for personal injuries sustained in an airplane crash, the trial court granted the defendants' motion for partial summary judgment. Summary judgment was based upon the execution of an exculpatory agreement which the court held insulated the defendants from liability for simple negligence involving the crash of an airplane. A claim alleging willful and wanton negligence is at issue in the trial court. The court of appeals affirmed. We affirm the court of appeals.

On November 17, 1973, the plaintiff, William Michael Jones, who was then seventeen years old, signed a contract with the defendant, Free Flight Sport Aviation, Inc. (Free Flight).[1] The contract allowed Jones to use Free Flight's recreational skydiving facilities, which included use of an airplane to ferry skydivers to the parachute jumping site. A covenant not to sue and a clause exempting Free Flight from liability were included in the contract:

"2A. EXEMPTION FROM LIABILITY. The [plaintiff] exempts and releases the Corporation, its, owners, officers, agents, servants, employees, and lessors from any and all liability, claims, demands or actions or causes of action whatsoever arising out of any damage, loss or injury to the [plaintiff] or the [plaintiff's] property while upon the premises or aircraft of the Corporation or while participating in any of the activities contemplated by this Agreement, whether such loss, damage, or injury results from the negligence of the Corporation, its officers, agents, servants, employees, or lessors or from some other cause."

The contract also contained an alternative provision which would have permitted Jones to use Free Flight's facilities at an increased cost, but without releasing Free Flight from liability for negligence.[2]

On December 28, 1973, Jones attained the age of eighteen.[3] Ten months later, on

---

1. Even though Jones' mother had ratified the terms of this contract on November 16, 1973, it should be noted that the approval by a parent does not necessarily validate an infant child's contract. *See generally, Kaufman v. American Youth Hostels*, 13 Misc.2d 8, 174 N.Y.S.2d 580 (1957); *Fedor v. Mauwehu Council, Boy Scouts of America*, 21 Conn.Sup. 38, 143 A.2d 466 (1958).

2. The record indicates that the alternative provision of the contract was crossed out when Jones signed the contract. However, the record does not establish that Free Flight would have prohibited Jones from participating in skydiving activities if the alternative provision had not been crossed out.

"2B. ALTERNATE PROVISION. In consideration of the deletion of the provisions, 2A, 3, 4, and 5 herein regarding ASSUMPTION OF RISK, EXEMPTION FROM LIABILITY, COVENANT NOT TO SUE, INDEMNITY AGAINST

THIRD PARTY CLAIMS, and CONTINUATION OF OBLIGATIONS, the Participant has paid the additional sum of $50.00 upon execution of this agreement, receipt of which is hereby acknowledged by the Corporation.

"2C. It is understood that acceptance of this ALTERNATIVE PROVISION does not constitute a contract of insurance, but only waives Corporation's contractual defenses which would otherwise be available."

3. Section 13–22–101(1)(a), C.R.S. 1973 provides: "Notwithstanding any other provision of law enacted or any judicial decision made prior to July 1, 1973, every person, otherwise competent, shall be deemed to be of full age at the age of eighteen years or older for the following specific purposes: To enter into any legal contractual obligation and to be legally bound thereby to the full extent as any other adult person . . . ."

October 19, 1974, he suffered serious personal injuries in an airplane crash which occurred shortly after takeoff from Littleton Airport. Free Flight furnished the airplane as part of its skydiving operation.[4]

On November 21, 1975, nearly two years after attaining his majority, Jones filed suit against Free Flight alleging negligence and willful and wanton misconduct as the cause of the airplane crash. The defendants included the owners and operators of the airplane, the airport, and Free Flight. Based upon the exculpatory agreement, the trial court granted summary judgment in favor of the defendants. The court of appeals affirmed the trial court.

Jones asserts three grounds for reversal of the summary judgment. First, he claims that he disaffirmed the contract with Free Flight within a reasonable time after he attained his majority by filing suit. Second, he asserts that the exculpatory agreement is void as a matter of public policy. Third, he contends that inasmuch as an exculpatory agreement must be strictly construed against the party seeking to avoid liability for negligence, the injuries which he sustained as a result of the airplane crash were beyond the scope of the agreement.

## I.

### Summary Judgment

■ Summary judgment is only granted if the pleadings, admissions, depositions, answers to interrogatories, and affidavits establish that no genuine issue exists as to any material fact and judgment should be entered as a matter of law. C.R.C.P. 56(c). It is, however, a drastic remedy, and should only be granted upon a clear showing that there is no genuine issue as to any material fact. *Ginter v. Palmer and Company*, 196

Colo. 203, 585 P.2d 583 (1978); *Roderick v. City of Colorado Springs*, 193 Colo. 104, 563 P.2d 3 (1977); *Abrahamsen v. Mountain States Tel. and Tel. Co.*, 177 Colo. 422, 494 P.2d 1287 (1972); *Pritchard v. Temple*, 168 Colo. 555, 452 P.2d 381 (1969). In determining whether summary judgment is proper, the trial court must resolve all doubts as to whether an issue of fact exists against the moving party. *United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Ginter v. Palmer, supra.* However, the existence of a difficult or complicated question of law, when there is no issue as to the facts, is not a bar to summary judgment. *Ammons v. Franklin Life Insurance Company*, 348 F.2d 414 (5th Cir. 1965).

Consequently, our review of the order granting summary judgment necessarily involves a determination of whether a genuine issue as to any material fact exists which would foreclose the defendants from obtaining summary judgment as a matter of law.

## II.

### Ratification

■ As a matter of public policy, the courts have protected minors from improvident and imprudent contractual commitments by declaring that the contract of a minor is voidable at the election of the minor after he attains his majority.[5] *Doenges-Long Motors v. Gillen*, 138 Colo. 31, 328 P.2d 1077 (1958). A minor may disaffirm a contract made during his minority within a reasonable time after attaining his majority or he may, after becoming of legal age, by acts recognizing the contract, ratify it. *Keser v. Chagnon*, 159 Colo. 209, 410 P.2d 637 (1966); *Fellows v. Cantrell*, 143 Colo. 126, 352 P.2d 289 (1960); *Doenges-*

---

4. Inferences can be gleaned from the record that indicate that Jones used Free Flight's services on several occasions between November 17, 1973, the date that the contract was signed, and October 19, 1974, the date of the crash. At the hearing on the defendants' motion for summary judgment and the plaintiff's motion to dismiss the defendants' counterclaim, counsel for the plaintiff stated:

MR. ULLSTROM: "In addition, he's a minor, there was no consideration for this agreement, and the fact that he'd made several parachute jumps seems to me should not enter into it."

5. See n.3, *supra.*

*Long v. Gillen, supra; Kendrick v. Neisz,* 17 Colo. 506, 30 P. 245 (1892).

■ Affirmance is not merely a matter of intent. It may be determined by the actions of a minor who accepts the benefits of a contract after reaching the age of majority, or who is silent or acquiesces in the contract for a considerable length of time. What act constitutes ratification or disaffirmance is ordinarily a question of law to be determined by the trial court. *Sullivan v. Bennett,* 261 Mich. 232, 246 N.W. 90 (1933). We agree that what constitutes a reasonable time for affirmance or disaffirmance is ordinarily a question of fact to be determined by the facts in a particular case.[6] We conclude, however, that the trial court properly determined that Jones ratified the contract, as a matter of law, by accepting the benefits of the contract when he used Free Flight's facilities on October 19, 1974.

Thus, since Jones ratified the contract, the factual issue of whether his suit for personal injuries was filed within a reasonable time after attaining his majority and constituted disaffirmance of the contract, is not relevant. Accordingly, the entry of summary judgment on the issue of ratification was not error.

### III.

### The Contract

Jones' assertion that his contract with Free Flight is void as a matter of public policy, raises two issues: (A) whether the contract with Free Flight is an adhesion contract; and (B) the validity of the exculpatory provisions of the contract. Our consideration of the two issues necessarily involves a determination, as a matter of law, whether summary judgment was properly granted based upon the undisputed facts in this case.

### A.

### Adhesion Contract

■ An adhesion contract is a contract drafted unilaterally by a business enterprise and forced upon an unwilling and often unknowing public for services that cannot readily be obtained elsewhere. *See Chandler v. Aero Mayflower Transit Company,* 374 F.2d 129 (1967); A. Ehrenzweig, *Adhesion Contracts in the Conflict of Laws,* 53 Col.L.Rev. 1072. An adhesion contract is generally not bargained for, but is imposed on the public for a necessary service on a take or leave it basis. *See generally Clinic Masters v. District Court,* 192 Colo. 120, 556 P.2d 473 (1976); *Standard Oil Company of California v. Perkins,* 347 F.2d 379 (9th Cir. 1965).

In *Clinic Masters v. District Court, supra,* this Court stated that even though a contract is a printed form and offered on a "take-it-or-leave-it" basis, those facts alone do not cause it to be an adhesion contract. There must be a showing "that the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation, or that [the] services could not be obtained elsewhere." *Id.* at 124, 556 P.2d 473. *See also, W. C. James Inc. v. Phillips Petroleum Company,* 347 F.Supp. 381 (D.Colo.1972); *Weaver v. American Oil Company,* 257 Ind. 458, 276 N.E.2d 144 (1971); *Williams v. Walker-Thomas Furniture Company,* 350 F.2d 445 (D.C.Cir.1965).

■ The various elements of an adhesion contract may be characterized as substantive (those that appear in the contract) and procedural (those that must be identified by resort to evidence relating to the formation of the contract). *Matter of Friedman,* 64 A.D.2d 70, 407 N.Y.S. 999 (1978). However, whether the issue is substantive or procedural, the determination of whether the contract is an adhesion contract is a matter of law for the court to resolve. *Wilson Trading Corp. v. David Ferguson Ltd.,* 23 N.Y.2d 398, 297 N.Y.S.2d 108, 244 N.E.2d 685 (1968). Thus, in the

---

**6.** We note that an exculpatory agreement may, in some instances, be disaffirmed by bringing suit on the exempted claim. *See Del Santo v. Bristol County Stadium, Inc.,* 273 F.2d 605 (1st Cir. 1960); *Byrne v. Simco Sales Service of Penn., Inc.,* 179 F.Supp. 569 (E.D.Pa.1960); *Kaufman v. American Youth Hostels,* 13 Misc.2d 8, 174 N.Y.S.2d 580 (1957).

absence of any genuine issue of material fact, the issue of whether a contract is an adhesion contract, does not preclude the entry of summary judgment.

We conclude that the record in the instant case supports the trial court's determination that the contract between Jones and Free Flight was not an adhesion contract as a matter of law.[7]

Jones contends that this was an adhesion contract because he was not allowed to select the alternative provision which would have allowed him to participate in the activities without releasing Free Flight from liability for its negligence, and that a genuine issue as to his lack of choice precluded the entry of summary judgment.[8] We disagree. As we stated in *Clinic Masters v. District Court, supra,* the fact that a contract is a printed form contract and offered on a "take-it-or-leave-it" basis does not alone cause it to be an adhesion contract.

We also agree with the court of appeals' conclusion that nothing in the record establishes a disparity in bargaining power, or that the services provided by Free Flight could not be obtained elsewhere.

### B.

### The Exculpatory Provisions

Jones asserts that the exculpatory agreement is void as a matter of public policy.

We disagree. The defendants contend that *Barker v. Colorado Region,* 35 Colo.App. 73, 532 P.2d 372 (1974), is dispositive of the issue of the validity of the exculpatory agreement. In *Barker,* the court of appeals held that an exculpatory clause in a contract relating to recreational activities will be given effect where the intention of the parties is expressed in sufficiently clear and unequivocal language and does not fall within any of the categories where the public interest is directly involved.

Jones, however, claims that summary judgment should not have been granted for three reasons. First, he argues that because exculpatory agreements must be strictly construed against the party seeking exemption, the agreement here does not insulate the defendants from liability for negligence in connection with a crash that occurred prior to the time that Jones made a parachute jump. Second, he claims that Free Flight was acting as a common carrier when it carried Jones, for compensation, to an altitude from which he could make a parachute jump, and that a common carrier by air cannot compel a passenger to release or limit the carrier's legal liability for its own negligence. Third, he contends that Free Flight, which is engaged in the private air charter business and operates under a Part 135 Certificate, is subject to FAA reg-

7. Jones asserts that *Rosen v. LTV Recreational Development, Inc.,* 569 F.2d 1117 (10th Cir. 1978), requires a different conclusion. In *Rosen,* the court characterized a season ski pass which contained a waiver of liability for negligence as an adhesion contract. The court stated that where an adhesion contract is involved, the contract will be strictly construed, and the court cannot imply provisions not expressed in the agreement. The agreement in *Rosen* attempted to exonerate a ski area for injuries resulting from the negligence and carelessness of fellow skiers, but did not specifically waive injuries resulting from the negligence of the ski area. Consequently, the court affirmed the trial court's determination that the scope of the agreement was a material issue of fact for the fact finder to determine. In the instant case, the contract expressly exempts Free Flight from liability for negligence "while upon the aircraft of the Corporation." Consequently, even if Jones could successfully argue that the contract was an adhesion contract, the wording of the exculpatory agreement, under the rationale of *Rosen,* did not preclude the trial court from granting the defendants motion for summary judgment.

8. The defendants (Dressels) request for admissions stated in part: "3. That the 'X' over paragraphs 2B and 2C of Exhibit A to the Answer and Counterclaim filed by these defendants was placed on the original of the 'AGREEMENT' by or at the direction of William Michael Jones, the plaintiff herein at or before the time he signed it."
The plaintiff's answer to the request for admissions stated in part: "3. Paragraph (sic) 2B and 2C were X'd out when the Plaintiff signed said document; however, before signing said documents, the plaintiff was informed that if the chose paragraph (sic) 2B and 2C, he would not be able to parachute."
See n.2, *supra.*

ulations which impose standards of safety upon the pilot of an airplane, and that Free Flight cannot contract away its liability for negligence in the performance of a duty imposed by law or where the public interest requires performance.[9]

■ The determination of the sufficiency and validity of an exculpatory agreement is a question of law for the court to determine. *Product Research Association v. Pacific Tel. & Tel. Company*, 16 Cal. App.3d 651, 94 Cal.Rptr. 216 (1971); *Ciofalo v. Vic Tanney Gyms*, 10 N.Y.2d 294, 220 N.Y.S.2d 962, 177 N.E.2d 925 (1961). Generally, an issue relating to the validity of an exculpatory agreement does not preclude the entry of summary judgment. *But see, Erickson v. Wagon Wheel Enterprises, Inc.*, 101 Ill.App.2d 296, 242 N.E.2d 622 (1968). (Issue as to whether an exculpatory clause is binding due to circumstances surrounding its execution is a factual issue.)

■ An exculpatory agreement, which attempts to insulate a party from liability from his own negligence, must be closely scrutinized, and in no event will such an agreement provide a shield against a claim for willful and wanton negligence. *Barker v. Colorado Region, supra; Kansas City Power & Light Company v. United Telephone Company of Kansas, Inc.*, 458 F.2d 177 (1972); *Ciofalo v. Vic Tanney Gyms, Inc., supra.* In determining whether an exculpatory agreement is valid, there are four factors which a court must consider: (1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language. *See Rosen v. LTV Recreational Development, Inc.*, 569 F.2d 1117 (10th Cir. 1978); *Barker v. Colorado Region, supra; Threadgill v. Peabody Coal Co.*, 34 Colo.App. 203, 526 P.2d 676 (1974); *Ciofalo v. Vic Tanney Gyms, Inc., supra.*

Measured against the four factors which determine the validity of an exculpatory agreement, we conclude that the trial court correctly held, as a matter of law, that the exculpatory agreement was valid. Therefore, the granting of defendants' motion for summary judgment was not error.

The duty to the public factor is not present in this case. In *Tunkl v. Regents of University of California*, 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441 (1963), the California Supreme Court stated:

"In placing particular contracts within or without the category of those affected with a public interest, the courts have revealed a rough outline of that type of transaction in which exculpatory provisions will be held invalid. Thus the attempted but invalid exemption involves a transaction which exhibits some or all of the following characteristics. It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain

**9.** 14 C.F.R., § 135.5 provides: "Certificate and operations specifications required. No person may operate an aircraft under this part without, or in violation of, an air taxi/commercial operator (ATCO) operating certificate and appropriate operations specifications issued under this part, or, for operations with large air- craft having a maximum passenger seating configuration, excluding any pilot seat, of more than 30 seats, or a maximum payload capacity of more that 7,500 pounds, without, or in violation of, appropriate operations specifications issued under Part 121 of this chapter."

protection against negligence. Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents." *Id.* 32 Cal.Rptr. at 36, 383 P.2d at 444.

In light of the foregoing factors, we conclude that the contract between Jones and Free Flight does not fall within the category of agreements affecting the public interest.

Jones relies on the Federal Aviation Regulations as a basis for disregarding the exculpatory provisions of the contract. He contends that the regulations governing private air charter business, as well as the F.A.A. regulation governing common carriers, prevents the enforcement of the exculpatory provision in the contract. Private Air Charter Business, 14 C.F.R. § 135.1.

Admittedly, a commercial air operation is a business that is subject to extensive regulation. 14 C.F.R. § 135, *et seq.* We note, however, that 14 C.F.R. § 135.1(a)(3) provides that the rules governing operation of air carriers apply to: "[t]he carrying in air commerce by any person, other than an air carrier, of persons or property for compensation or hire [commercial operations] in small aircraft...." Therefore, the standards of care and safety for private air charter services set forth in the Code of Federal Regulations apply only if Free Flight was engaged in "commercial operations" at the time of the airplane crash.

Jones also claims that Free Flight was operating as a common carrier when it accepted funds and provided an aircraft to ferry him to an altitude from which he could make a parachute jump. He is correct in his statement that releases or limitations of liability in airline tickets issued by a common carrier have uniformly been held invalid. *Conklin v. Canadian Colonial Airways, Inc.*, 266 N.Y. 244, 194 N.E. 692 (1935); *Curtiss-Wright Flying Service, Inc.*

*v. Glose*, 66 F.2d 710 (3d Cir. 1933), *cert. denied* 290 U.S. 696, 54 S.Ct. 132, 78 L.Ed. 599 (1938). *See L. Kreindler,* I. *Aviation Accident Law* § 3.13 (rev.1977). He is in error, however, in his contention that Free Flight was operating as a common carrier or was engaged in "commercial operations" as defined by 14 C.F.R. § 135.1(a)(3).[10] 14 C.F.R. § 1.1 provides:

" 'Commercial operator' means a person who, for compensation or hire, engages in the carriage by aircraft in air commerce of persons or property, other than as an air carrier or foreign air carrier or under the authority of Part 375 of this Title. Where it is doubtful that an operation is for 'compensation or hire,' the test applied is whether the carriage by air is merely incidental to the person's other business or is, in itself, a major enterprise for profit."

 Here, the facts are clear that Free Flight was not engaged in "commercial operations" or acting as a common carrier in connection with this skydiving flight. Paragraph four of Jones' complaint alleges that the defendants were "engaged in the business of operating a service for the general aviation public involving parachuting, soaring, and aerobatics...." Carriage by air was incidental to Free Flight's principal business. The standards of care and safety for private air charter services set forth in the Code of Federal Regulations do not apply.

 While it is not necessary for a contract to embody all of the characteristics set forth in *Tunkl, supra,* to meet the test, we conclude that an insufficient number of these characteristics are present in the instant case to establish that the contract between Jones and Free Flight affected the public interest. The service provided by Free Flight was not a matter of practical necessity for even some members of the public; because the service provided by Free Flight was not an essential service, it

**10.** Jones argues that the applicable definition of "common carrier" is found at section 40–1–102, C.R.S. 1973. We note, however, that the definition of "common carrier" used in that portion of the statute applies only to articles 1 through 7 of the "Public Utilities Law," sections 40–1–101 to 40–7–111, C.R.S. 1973.

did not possess a decisive advantage of bargaining strength over Jones; and the contract was not an adhesion contract.

Finally, in our consideration of the remaining factors that must be reviewed in considering the validity of an exculpatory agreement, we note that there was no disagreement between the parties that the contract was fairly entered into. Likewise, the agreement expressed the parties' intention in clear and unambiguous language; the contract used the word "negligence" and specifically included injuries sustained "while upon the aircraft of the Corporation." *See generally, Gross v. Sweet,* 49 N.Y.2d 102, 424 N.Y.S.2d 365, 400 N.E.2d 306 (1979); *Kaufman v. American Youth Hostels,* 13 Misc.2d 8, 174 N.Y.S.2d 580 (1957).

We conclude that the exculpatory agreement was not void as a matter of public policy, and that there was no genuine issue as to any material fact.

Accordingly, the trial court properly granted a partial summary judgment on the simple negligence issue and we, therefore, affirm the decision of the court of appeals.

LEE, J., does not participate.