Roane SIMKIN, Plaintiff–Appellant,

v.

HEIL VALLEY RANCH, INC., a Colorado corporation, Defendant–Appellee.

No. 85CA1511.

Colorado Court of Appeals, Div. II.

March 17, 1988.

As Modified on Denial of Rehearing Aug. 4, 1988.

Certiorari Granted (Heil Valley) Dec. 19, 1988.

Ranch, Inc., (Ranch) from liability to her based on her fall from a horse. We reverse and remand for further proceedings.

Simkin filed a personal injury action which alleged that Ranch's negligence and breach of warranty caused injuries to her when she fell from a horse provided by Ranch. The trial court entered a partial summary judgment in favor of Ranch based on a release or exculpatory agreement which it concluded operated to relieve defendant from any liability to plaintiff for either breach of warranty or negligence. It further found that the language of the agreement was clearly printed on the front of the release in language which Simkin could understand. Therefore, she knew, or had reason to know, the risks before signing such release.

The release at issue states:

"THIS IS A RELEASE OF LIABILITY. PLEASE READ BEFORE SIGNING. Upon my acceptance of horse and equipment, I acknowledge that the use, handling and riding of a horse involves a risk of physical injury to any individual undertaking such activities; and that a horse irrespective of its training and usual past behavior and characteristics may act or react unpredictably at times based upon instinct or fright which, likewise, is an inherent risk assumed by a horseback rider. The undersigned expressly assumes such risk and waives any claim he/she might state against the stables as a result of physical injury incurred in said activities."

Simkin argues that the release was not exculpatory, as a matter of law, because it did not contain language which unambiguously released Ranch from liability for its own negligence and breach of warranty. She asserts that Ranch should have known that the horse provided to her was unsafe and unreasonably dangerous.

■ In determining whether an exculpatory agreement is valid, the court must consider four factors: (1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4)

George T. Ashen, M. Paula Ashen, Denver, for plaintiff-appellant.

Hall & Evans, David R. Brougham, Brooke Wunnicke, Denver, for defendant-appellee.

SMITH, Judge.

Roane Simkin (Simkin) appeals a partial summary judgment holding that a certain release, if it were found to have been executed by her, would exculpate Heil Valley

whether the intention of the parties is expressed in clear and unambiguous language. *Jones v. Dressel,* 623 P.2d 370 (Colo.1981). The fourth factor is at issue here.

In *Jones,* the clause which exempted liability was found to be explicit in expressing the parties' intent when it specifically released the corporation from any liability, claims, demands, or causes of actions, whatsoever, while plaintiff was upon the premises or aircraft of the corporation, while plaintiff participated in any of its activities, and whether or not loss, damage, or injury resulted from the negligence of the corporation. No Colorado case addresses the effect of exculpatory language in a release when the word "negligence" is not used.

*Jones v. Dressel, supra,* relied on the case of *Gross v. Sweet,* 49 N.Y.2d 102, 424 N.Y.S.2d 365, 400 N.E.2d 306 (1979). *Gross* held that unless the intention of the parties is expressed in unmistakable language, an exculpatory clause will not be deemed to insulate a party from liability for his own negligent acts. In *Gross,* the release alerted the plaintiff to the dangers inherent in parachute jumping, and expressly stated that he entered into the sport with apprehensions of its risks. However, nowhere did the release explicitly express the intention to exempt defendant from liability for injury which resulted from defendant's failure to use due care, either in his training methods or in his furnishing safe equipment. Consequently, despite the much broader language of the release in that case, plaintiff was not barred from suing for personal injuries he allegedly incurred as a result of defendant's own negligence.

More recently, a New York court has again resolved an ambiguous release, couched in general terms, against the defendant who had drafted the agreement. *See Geise v. County of Niagra,* 117 Misc. 2d 470, 458 N.Y.S.2d 162 (1983). In *Geise,* plaintiff released defendant "from any liability for any harm, injury, or damage ... including all risks ... whether foreseen or unforeseen...." The court found that although plaintiff acknowledged the risks that could be a part of tobogganing, such language did not explicitly express an agreement that plaintiff would accept the enhanced risks resulting from defendant's negligence in operating or maintaining the facilities.

Similarly, an Illinois court has held that since the language on certain membership forms did not contain a clear and adequate description of the covered activities and did not clearly indicate that injuries resulting from negligence in maintaining the facilities or equipment would be covered by the release, defendant was not exculpated from liability for negligence. *Calarco v. YMCA of Greater Metropolitan Chicago,* 149 Ill. App.3d 1037, 103 Ill.Dec. 247, 501 N.E.2d 268 (1986).

As in *Geise v. County of Niagra, supra,* and *Gross v. Sweet, supra,* by signing the release at issue, Simkin acknowledged certain risks inherent in the activity she was involved in. However, she did not accept the responsibility for injuries which might result from Ranch's negligence. Furthermore, this release is ambiguous as to whether Simkin assumed all risks related to horseback riding or whether she merely assumed the risk that "irrespective of its training and usual past behavior and characteristics [a horse] may act or react unpredictably at times based upon instinct or fright...."

Also, if Simkin assumed all risks as argued by Ranch, nevertheless, the issue of her comparative negligence because of such assumption is a question of fact for resolution by the jury, *Loup–Miller v. Brauer & Associates—Rocky Mountain, Inc.,* 40 Colo.App. 67, 572 P.2d 845 (1977), on both of Simkin's theories of liability. *See Swann v. Ashton,* 327 F.2d 105 (10th Cir.1964).

Indeed, here it could be argued that the effect of the descriptive language concerning risks was sufficient only to negate the possibility of a strict liability claim based on an inherently dangerous activity. If we were to adopt defendant's theory that the general language of the last sentence of the purported release was sufficient to pre-

clude negligence and warranty claims, the preceding language of the paragraph would have no purpose and the release would be equally as effective if it said nothing more than, "The undersigned expressly ... waives any claim he/she might state against the stables as a result of physical injury incurred in such [horse riding] activit[y]." Under *Jones v. Dressel, supra,* this clearly would not be sufficient to constitute an adequate release or waiver.

Therefore, we conclude that the partial summary judgment in favor of the Ranch was in error. This ruling is not intended to preclude the raising of the release as a defense under C.R.C.P. 8(c).

In light of this disposition, we need not address the other contentions of error.

The summary judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

PLANK, J., concurs.

BABCOCK, J., dissents.

BABCOCK, Judge, dissenting.

I respectfully dissent.

An exculpatory agreement must be closely scrutinized and in no event will it shield against a claim for willful and wanton negligence. *Jones v. Dressel,* 623 P.2d 370 (Colo.1981). However, a common sense reading of this executed release's entire language, *see Schutkowski v. Carey,* 725 P.2d 1057 (Wyo.1986), leads me to conclude that, by signing the release, plaintiff acknowledged the possibility of the injury she in fact suffered while riding the Ranch's horse and agreed that the Ranch not be deemed the guardian of her safety. *See Hewitt v. Miller,* 11 Wash.App. 72, 521 P.2d 244 (1974); *Blide v. Rainier Mountaineering, Inc.,* 30 Wash.App. 571, 636 P.2d 492 (1981). Thus, this accident was well within the clear, unambiguous, and express intent of the parties to the release.

Plaintiff's release of *"any* claim" she may have had against the Ranch arising out of horseback riding clearly recites her intent to release the Ranch from the claims asserted here. Accordingly, use of the talismanic terms "negligence" and "breach of warranty" was unnecessary to render the release effective. *See Hewitt v. Miller, supra; see also LeSueur Creamery, Inc. v. Haskon, Inc.,* 660 F.2d 342 (8th Cir. 1981); *Mullan v. Quickie Aircraft Corp.,* 797 F.2d 845 (10th Cir.1986); *Kleinfeld v. Link,* 9 Ohio App.3d 29, 457 N.E.2d 1187 (1983).

The majority implicitly reads *Jones v. Dressel, supra,* to require inclusion of the terms "negligence" and "breach of warranty" in an exculpatory agreement to render it clear and unambiguous and, thus, effective. *Jones* is not definitive in this regard.

The court's reliance in *Jones* on use of the term "negligence" to support its conclusion that the release there was valid did not establish "negligence" as the definitive password into the kingdom of exculpability. Rather, the *Jones* court stressed the importance of the presence of the word "negligence" to buttress its conclusion that the plaintiffs there fully understood the true content and nature of the document they were signing. Contrary to the majoritys' reading of the case, *Jones* does not establish the word "negligence" as a prerequisite to release from liability.

Moreover, the case of *Gross v. Sweet,* 49 N.Y.2d 102, 424 N.Y.S.2d 365, 400 N.E.2d 306 (1979), relied upon by the majority to interpret *Jones,* was cited in that case merely as a source of helpful background information relating to this issue. This is evidenced by the use of the "see generally" signal instead of a "see" signal, or the use of no signal. *See A Uniform System of Citation* 9 (14th ed. 1986).

I would hold that the language of the release in this case adequately reflects the plaintiff's intent to release the Ranch from liability for her injury and that, thus, the fourth prong of the *Jones* test is met. Accordingly, I would affirm.