**Kathy RIEHL, Plaintiff–Appellant,**

v.

**B & B LIVERY, INC., Defendant–Appellee.**

No. 95CA1303.

Colorado Court of Appeals, Div. V.

March 6, 1997.

Rehearing Denied April 17, 1997.

Certiorari Granted Oct. 20, 1997.

Davis & Ceriani, P.C., Bruce E. Rohde, John W. Himmelmann, Denver, for Plaintiff-Appellant.

White and Steele, P.C., John P. Craver, John M. Lebsack, Denver, for Defendant-Appellee.

Opinion by Judge TURSI.*

Plaintiff, Kathy Riehl, appeals from the summary judgment dismissing her claims for injuries sustained when she fell from a horse rented from defendant, B & B Livery, Inc. We reverse and remand for further proceedings.

Plaintiff suffered injuries when she was thrown from a horse while participating on a ride organized by defendant. Prior to beginning the ride, plaintiff executed an exculpatory agreement (Agreement) which provided as follows:

I, _____ understand the potential dangers that I could incur in mounting a horse and in riding on said horse. Understanding those risks I do hereby advise and represent and warrant to B & B Livery, Inc., that I do hereby release that Company, its officers, directors, shareholders, employees and anyone else directly or indirectly connected with that Company from any liability in the event of any injury or damage of any nature (or perhaps even death) to me or anyone else caused by my electing to mount and then ride a horse owned or operated by B & B Livery, Inc. This release shall be binding not only upon me but also upon my heirs, my personal representatives and legal representatives and anyone who could claim an interest through me.

I have executed this release willingly and after having read or been advised of the warning posted by B & B Livery, Inc., which warning states as follows: Under Colorado Law, an equine professional is not liable for an injury to or the death of a participant in equine activities resulting from the inherent risks of equine activities pursuant to section 13–21–119 Colorado Revised Statutes.

Plaintiff filed a complaint which alleged that, in allowing her to participate in the planned ride, defendant failed properly to determine or account for her riding ability level. The complaint further alleged that defendant supplied plaintiff with faulty gear or equipment for the ride. Finally, the complaint also alleged that defendant's conduct constituted willful and wanton or gross negligence.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1996 Cum.Supp.).

Defendant successfully moved for summary judgment on the grounds that plaintiff's claims were precluded by the Agreement.

## I.

Plaintiff first contends that the trial court erred in concluding that the Agreement barred her claims which were based upon claims not covered by the release or statute. We agree.

■ Although historically disfavored, agreements attempting to exculpate a party from his or her own negligence have been upheld under certain circumstances. *See Jones v. Dressel,* 623 P.2d 370 (Colo.1981).

■ In determining whether an exculpatory agreement is valid, there are four factors that a court must consider: (1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language. *Jones v. Dressel, supra.*

■ Here, the dispute centers around element four of the *Jones* test, namely, whether the Agreement demonstrated a clear intention of the parties that defendant would not be held liable for any and all acts of negligence.

In *Heil Valley Ranch, Inc. v. Simkin,* 784 P.2d 781 (Colo.1989), our supreme court analyzed an exculpatory agreement which, coincidentally, also pertained to horseback riding. In discussing the fourth element of the test set forth in *Jones,* the court held the critical inquiry "should be whether the intent of the parties was to extinguish liability and whether this intent was clearly and unambiguously expressed." The court concluded that the agreement there at issue covered the plaintiff's negligence claims, because it was "written in simple and clear terms," because plaintiff indicated in her deposition that she understood the agreement, and because the first sentence of the agreement "specifically addressed a risk that adequately described the circumstances of [plaintiff's] injury." *Heil Valley Ranch, Inc. v. Simkin, supra,*

784 P.2d at 785. The *Simkin* court approved broad language to the extent that it intends to cover risks that are obvious to experienced participants.

Here, however, unlike that in *Simkin,* the language of the Agreement taken in conjunction with the incorporated statute is ambiguous. On the one hand, it provides that a participant voluntarily releases defendant from *any liability in the event of any injury* or damage of any nature caused by electing to mount and then ride a horse owned or operated by defendant. But, it then goes on to provide that the participant has executed the Agreement after having read or been advised that equine professionals are not liable for *injuries or death resulting from the inherent risks of equine activities* pursuant to § 13–21–119, C.R.S. (1996 Cum.Supp.).

"Inherent risks" and exceptions to such risks are defined in the statute. Sections 13–21–119(2)(f) & 13–21–119(4)(b), C.R.S. (1996 Cum.Supp.).

We conclude that the terms of the Agreement, when read together with § 13–21–119 as referenced therein, create an ambiguity as to whether it was intended to exculpate defendant from liability for all negligent acts, including acts contrary to § 13–21–119, and not foreseeable, or, rather, whether exculpation was intended to extend only to those acts that result in injuries arising from the inherent risks of equine activities that are reasonably foreseeable and consistent with the public policy of the state as expressed in the statute.

In *Heil,* the plaintiff stated that she understood the agreement. Here, when questioned on her understanding, plaintiff stated that she had relied upon the phrase "inherent risk."

Section 13–21–119 (adopted in 1990 after *Heil* and amended in its entirety in 1992) first grants limited immunity for specifically defined inherent risks of equine activities. Then, § 13–21–119(4)(b), C.R.S. (1996 Cum. Supp.), specifically excludes from immunity providers who:

(I)(A) Provided the equipment or tack, and knew or should have known that the equipment or tack was faulty, and such equip-

ment or tack was faulty to the extent that it did cause the injury; or

(B) Provided the animal and failed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity ... and determine the ability of the participant to safely manage the particular animal based on the participant's representations of his ability;

. . . .

(III) Commits an act or omission that constitutes willful or wanton disregard for the safety of the participant, and that act or omission caused the injury. . . .

Although specific reference to negligence need not be included in an exculpatory clause, the acts for which protection from liability is sought must be reasonably foreseeable as a consequence of the risk for which the participant contracted. Here, the record disclosed plaintiff was not an experienced participant. *See Heil Valley Ranch, Inc. v. Simkin, supra* (when parties adopt broad language in an exculpatory agreement, it is reasonable to interpret the intended coverage to be as broad as the risks that are obvious to the experienced participant).

Additionally, we find guidance in the legislative history. Then State Senator Allard in introducing the bill that became the 1992 amendments to § 13–21–119, stated:

We are trying to correct a problem here where there needs to be recognized in law that there is an inherent risk of being around a horse. . . .

It says that once you've defined these definitions, that you're not liable for any of these inherent risks of equine activity— there's no civil liability and then there are some exceptions to that. . . .

Another example of an exception where you would not follow the non-liability provisions are when you have faulty equipment.

Hearing on S.B. 90–84 before the Senate Committee on Agriculture, Natural Resources and Energy, 57th General Assembly, Second Regular Session (Feb. 1, 1990) (Statement of Sen. Wayne Allard).

Hence, based upon the plain language of the statute, the legislative history, and the rules of statutory construction applicable when the General Assembly speaks with exactitude, we must construe the statute to mean that the inclusion or specification of a particular set of conditions necessarily excludes others. And, when, as here, the General Assembly plainly restricts a statute, that restriction must be acknowledged by th: courts. *Lunsford v. Western States Life Insurance,* 908 P.2d 79 (Colo.1995).

Further, inasmuch as release is an affirmative defense, *see* C.R.C.P. 8(c), we view the record as devoid of evidence that the risk of faulty gear or equipment is a risk inherent in equine activities, nor one that would probably be obvious to an inexperienced participant.

Based upon the Agreement and the provisions of § 13–21–119 incorporated therein, we conclude that the trial court erred in determining that the broad language contained in the opening paragraph of the Agreement barred plaintiff's claims premised upon specific exclusions from the referenced statutory limited immunity.

II.

We also agree with plaintiff's contention that the Agreement did not preclude her claims based upon wanton and willful or gross negligence.

In no event will an exculpatory agreement provide a shield against a claim for willful and wanton negligence. Section 13–21–119(4)(b)(III), C.R.S. (1996 Cum.Supp.). *Heil Valley Ranch, Inc. v. Simkin, supra; Jones v. Dressel, supra; see Barker v. Colorado Region–Sports Car Club of America, Inc.,* 35 Colo.App. 73, 532 P.2d 372 (1974).

On remand, plaintiff must also be allowed to proceed on her claim under this theory.

The judgment is reversed and the cause is remanded for further proceedings on all of plaintiff's claims.

ROY, J., concurs.

STERNBERG, C.J., concurs in part and dissents in part.

Chief Judge STERNBERG concurring in part and dissenting in part.

I agree with part II of the majority opinion which holds that plaintiff's claims based upon wanton and willful conduct or gross negligence were not barred by the agreement; however, I disagree with the majority's holding in Part I that the agreement was ambiguous and did not bar plaintiff's claims based upon simple negligence. Therefore, I respectfully concur in part and dissent in part.

The majority finds an ambiguity in the exculpatory agreement created by two different parts of the agreement. The first of these releases defendant from "any liability in the event of any injury or damage of any nature ... to me or anyone caused by my electing to mount and then ride a horse owned and operated by defendant." The last paragraph of the agreement makes reference to § 13–21–119, C.R.S (1996 Cum.Supp.) and provides that the participant has read or been advised of a warning that under Colorado law "an equine professional is not liable for an injury to ... a participant in equine activities resulting from the inherent risks of equine activities. . . ."

The majority correctly focuses on the issue whether the intention of the parties is expressed in clear, non-ambiguous language as required by *Jones v. Dressel,* 623 P.2d 370 (Colo.1981). However, I respectfully disagree with its conclusion that the language quoted above creates an ambiguity. I do not detect any conflict between the two provisions of the agreement. As noted in *Heil Valley Ranch, Inc. v. Simkin,* 784 P.2d 781 (Colo.1989): "[T]he inquiry should be whether the intent of the parties was to extinguish liability and whether this intent was clearly and unambiguously expressed." In my view, it is obvious that the parties did intend that defendant be absolved of liability for a broad range of conduct, including the negligent acts alleged here.

Further, as to the second part of the agreement that the majority finds so troubling, I consider it merely defendant's attempt to comply with the dictates of § 13–21–119(5)(a), C.R.S. (1996 Cum.Supp.) and conclude that, as such, it should not be used as a springboard into a sea of ambiguity.

Finally, I cannot accept an interpretation of the statute that bars individuals from entering into a contract of the type we are dealing with here.

For these reasons, I would hold that the simple negligence claim is barred by the exculpatory agreement.