The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
December 1, 2022

## 2022COA137

### No. 21CA1299, *Mother Doe v. Wellbridge Club Management* — Contracts — Exculpatory Agreements; Torts — Premises Liability — Negligence

A division of the court of appeals considers whether an

exculpatory provision in a membership agreement is valid as

applied to negligence-related claims against an athletic club based

on the sexual abuse of a minor on and off the club's premises by a

club employee. The division holds that the provision is not valid as

applied to these claims because the provision does not express the

parties' intention to waive such claims in clear, unambiguous, and

unequivocal language. As a result, the provision does not bar the

plaintiff's negligence and Premises Liability Act claims. The division

reverses the district court's grant of summary judgment in favor of

the defendant and vacates an associated costs order.

Court of Appeals No. 21CA1299
City and County of Denver District Court No. 20CV31185
Honorable J. Eric Elliff, Judge

Mother Doe and Jane Doe,

Plaintiffs-Appellants,

v.

Wellbridge Club Management LLC, d/b/a Colorado Athletic Club-Monaco
a/k/a Club Monaco,

Defendant-Appellee.

JUDGMENT REVERSED, ORDER VACATED,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE NAVARRO
Welling and Johnson, JJ., concur

Announced December 1, 2022

Burg Simpson Eldredge Hersh Jardine, P.C., D. David Batchelder, Nelson
Boyle, Jessica B. Prochaska, Alyssa C.E. Hill, Englewood, Colorado, for
Plaintiffs-Appellants

Chipman Glasser, LLC, Mark T. Barnes, Jennifer M. Osgood, Denver, Colorado,
for Defendant-Appellee

¶ 1     Plaintiffs, Mother Doe and Jane Doe (together, the Does), appeal the judgment entered in favor of defendant, Wellbridge Club Management LLC, d/b/a Colorado Athletic Club-Monaco, a/k/a Club Monaco (the Club), on Mother Doe's negligence claims and Premises Liability Act (PLA) claim.  The Does also appeal the order requiring Mother Doe to pay costs.  Mother Doe brought the claims on behalf of her daughter, Jane Doe, who was sexually abused while a minor by a Club employee.[1]  The district court concluded that Mother Doe's claims were barred by the exculpatory provision of the Club's membership agreement.  Addressing a novel issue in Colorado, we hold that the exculpatory provision does not bar Mother Doe's claims related to the sexual abuse of her daughter.  Therefore, we reverse the judgment, vacate the costs order, and remand the case for further proceedings.

I.     Factual and Procedural History

¶ 2     Jane Doe was a minor at all times relevant to this case.  In July 2014, she became a member of the Club when her grandfather

---

[1] Mother Doe filed the complaint as parent and legal guardian of Jane Doe.  Jane Doe has joined Mother Doe's notice of appeal and appellate briefs.

1

signed a membership agreement on her behalf.  In the fall of 2015, Jane Doe began taking tennis lessons from Milos Koprivica, an employee of the Club.  From August 2016 to February 2017, Koprivica sexually abused Jane Doe.  In her complaint, Mother Doe alleged that the abuse happened both on and off the Club's premises.  The Club terminated Koprivica's employment in February 2017.  He later pleaded guilty to criminal charges of child abuse and sexual exploitation of a child as a result of his abuse of Jane Doe.

¶ 3     Mother Doe sued the Club, asserting the following claims: (1) liability under the PLA, § 13-21-115, C.R.S. 2016;[2] (2) negligent hiring and retention; (3) negligent supervision; (4) negligence; (5) negligent infliction of emotional distress; and (6) respondeat superior liability.  On the Club's motion, the district court dismissed the PLA claim insofar as it alleged abuse that occurred off the Club's premises.  The court also dismissed the negligence-based claims insofar as they alleged abuse that occurred on the

---

[2] Because the PLA has since been amended, we rely on the version in effect at the time of the incidents alleged in this case.

Club's premises. Finally, the court dismissed the negligent hiring and respondeat superior claims.

¶ 4 The Club moved for summary judgment on the remaining claims. The Club advanced two arguments: (1) the exculpatory provision in the membership agreement barred the claims; and (2) no evidence showed that the Club knew, or should have known, that Koprivica was sexually abusing Jane Doe.

¶ 5 The membership agreement contained the following exculpatory provision:

> WAIVER AND RELEASE OF PERSONAL
> INJURY – I recognize, acknowledge, and agree
> that athletic activities and the use of the Club
> may result in personal injuries, including
> serious bodily injury or death. By accepting
> this agreement in using the [Club's] facilities,
> I assume all risks of injuries that I or my
> minor children may suffer and all
> responsibilities associated with the use of the
> Club's athletic facilities, including any athletic
> activities, showers, steam rooms, or other Club
> usage. I agree, waive, and release [the Club],
> its owners, managers, and any of their
> subsidiaries, assigns, successors, attorneys,
> and insurers (the [Club] Parties) from any and
> all claims, damages, liabilities, expenses, and
> costs arising out of, or relating to (a) the
> negligence of [the Club], its owners, managers,
> and employees, (b) any another member's [sic],
> guest's or invitee's conduct, (c) the condition of
> [the Club's] facilities, or (d) my or my Guests'

use of [the Club's] facilities and activities, including without limitation, my or my Guests' use of [the Club's] parking lot, athletic facilities, athletic equipment, pool, sauna, steam room, showers, or any other facilities and activities associated with [the Club]. Further, I agree to indemnify and defend the [Club] Parties against any and all claims, damages, costs, [and] expenses, arising from my and my Guests['] or Invitees['] use of [the Club's] facilities.

¶ 6    In a written order, the district court decided that this provision barred Mother Doe's claims. Specifically, the court concluded, "Plaintiff waived *all* injuries in connection with using the Club's facilities. Separately, she waived *all* negligence claims against the Club." The court continued, "Even if the negligence claim cannot be separated from the waiver regarding use of the Club (which is a strained reading), surely Plaintiff's injuries did arise from the fact that she availed herself of the Club's tennis coaching services." Thus, the court granted summary judgment in the Club's favor without addressing the Club's second argument.

¶ 7    Mother Doe filed two motions to reconsider. In the first motion, filed under C.R.C.P. 59, she argued that "the sexual grooming and sexual assault of a child is not contemplated by the membership agreement." In the second motion, filed under

4

C.R.C.P. 60, she argued that a new Colorado law — section 13-20-1204, C.R.S. 2022 — voided the exculpatory provision at issue.

¶ 8     The court denied both motions.  As to the first, the court ruled that Mother Doe simply repeated arguments the court had already considered and rejected.  As to the second motion, the court gave three reasons for its ruling: (1) "the [new] law was not in effect at the time of the [c]ourt's ruling, and indeed is still not in effect today"; (2) "the law clearly reflects the legislature's intent that it apply prospectively"; and (3) "the new law does not affect the law relied on by the [c]ourt in its summary judgment order."

¶ 9     On appeal, the Does contend that the district court erred because "[t]here is no evidence that the Does understood or intended that the waiver would extend to extinguish the Club's responsibility for its employee's grooming and sexual assault of Jane Doe."  Alternatively, the Does contend that reversal is required because section 13-20-1204 "declared the exculpatory clause void as contrary to public policy."  Finally, the Does ask us to vacate the court's costs order if we reverse the summary judgment order.

¶ 10    Because we conclude that the exculpatory provision does not bar Mother Doe's claims, we reverse the summary judgment, vacate

the costs order, and remand the case for further proceedings on Mother Doe's claims. As a result, we do not address the Does' arguments based on section 13-20-1204.

## II. Validity of the Exculpatory Provision as Applied to Mother Doe's Claims

¶ 11 The Does contend that the exculpatory provision does not bar Mother Doe's claims because Jane Doe's grandfather "could not [have] fathom[ed]" that he was releasing the right to bring claims based on Jane Doe's injuries resulting from a Club employee's sexual abuse of her. We agree that the exculpatory provision is not valid as applied to those claims.

### A. Standard of Review and General Principles

¶ 12 Summary judgment is appropriate if the pleadings and supporting documents establish that no genuine issue of material fact exists and judgment should be entered as a matter of law. *Redden v. Clear Creek Skiing Corp.*, 2020 COA 176, ¶ 12. We review a summary judgment ruling de novo. *Id.* Here, the district court granted summary judgment based solely on the exculpatory provision. Whether this provision is valid is a question of law that we review de novo. *Id.* at ¶ 13.

6

¶ 13    "Generally, exculpatory agreements have long been disfavored." *B & B Livery, Inc. v. Riehl*, 960 P.2d 134, 136 (Colo. 1998); *Stone v. Life Time Fitness, Inc.*, 2016 COA 189M, ¶ 14 (quoting *B & B Livery*, 960 P.2d at 136). In no event will an exculpatory agreement be permitted to shield against a claim of willful and wanton conduct. *Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 467 (Colo. 2004).

¶ 14    An exculpatory agreement attempting to insulate a party from liability for its own simple negligence, however, "is not necessarily void as against the public policy" of Colorado. *Id.* We strictly construe such an exculpatory agreement against the party seeking to limit its liability. *Hamill v. Cheley Colo. Camps, Inc.*, 262 P.3d 945, 952 (Colo. App. 2011); *see Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781, 784 (Colo. 1989). We also "closely scrutinize[]" an exculpatory agreement under four factors (the *Jones* factors) to determine whether it is valid: (1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the parties' intention was expressed in clear and unambiguous language.

*Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981); *see Redden,*
¶ 16.[3]

B.     Analysis

¶ 15     The question presented is whether the exculpatory provision
bars Jane Doe's right (or Mother Doe's right, on Jane Doe's behalf)
to pursue negligence claims against the Club related to the risk that
a Club employee would sexually abuse Jane Doe.  We conclude that
the provision does not bar these claims because it does not express
the parties' intention to waive such claims in clear, unambiguous,

---

[3] In the context of a parent's purported waiver of a child's claims, the General Assembly has prescribed an additional requirement. *See Wycoff v. Grace Cmty. Church of Assemblies of God*, 251 P.3d 1260, 1264 (Colo. App. 2010).  Section 13-22-107(3), C.R.S. 2022, provides that "[a] parent of a child may, on behalf of the child, release or waive the child's prospective claim for negligence." *But see* § 13-22-107(4) ("Nothing in this section shall be construed to permit a parent acting on behalf of his or her child to waive the child's prospective claim against a person or entity for a willful and wanton act or omission, a reckless act or omission, or a grossly negligent act or omission.").  To be valid and enforceable, however, the parent's decision to sign a waiver must be "voluntary and informed." § 13-22-107(1)(a)(V).  Because the Does rely primarily on the test from *Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981), and the application of that test is sufficient to resolve this appeal, we do not address whether the exculpatory provision runs afoul of section 13-22-107(1)(a)(V).

and unequivocal language. Therefore, with respect to these claims, the exculpatory provision is not enforceable.

¶ 16 Because the Does contend only that the provision fails to satisfy the fourth *Jones* factor, we confine our analysis to that factor. *See Jones*, 623 P.2d at 376. To reiterate, when determining the validity of an exculpatory agreement under the fourth *Jones* factor, we must closely scrutinize "the agreement to ensure that the intent of the parties is expressed in clear, unambiguous, and unequivocal language." *Stone*, ¶ 14; *see Chadwick*, 100 P.3d at 467. The question is not whether a detailed textual analysis would lead a court to determine that the language, even if ambiguous, would ultimately bar the plaintiff's claims. *Stone*, ¶ 22. Instead, we examine the "actual language of the agreement for legal jargon, length and complication, and any likelihood of confusion or failure of a party to recognize the full extent of the release provisions." *Chadwick*, 100 P.3d at 467.

¶ 17 The exculpatory provision in this case begins by acknowledging that "athletic activities and the use of the Club may result in personal injuries, including serious bodily injury or death." The provision then identifies the "risks of injuries" that the signer

"assume[s]" — those "associated with the use of the Club's athletic facilities, including any athletic activities, showers, steam rooms, or other Club usage."  The ensuing waiver and release of claims correspond to those assumed risks:

> I agree, waive, and release [the Club Parties] from any and all claims, damages, liabilities, expenses, and costs arising out of, or relating to (a) the negligence of [the Club], its owners, managers, and employees, (b) any another member's [sic], guest's or invitee's conduct, (c) the condition of [the Club's] facilities, or (d) my or my Guests' use of [the Club's] facilities and activities, including without limitation, my or my Guests' use of [the Club's] parking lot, athletic facilities, athletic equipment, pool, sauna, steam room, showers, or any other facilities and activities associated with [the Club].

¶ 18    When read as a whole, the "dominant focus" of the exculpatory provision is on the risks of athletic activities associated with the use of the Club's facilities.  *Stone*, ¶ 27.  The provision makes no mention of the risk of sexual assault or of activities raising such a risk.  Although a release "need not contain any magic words to be valid," it must contain "some reference to waiving personal injury claims *based on the activity being engaged in.*"  *Wycoff v. Grace Cmty. Church of Assemblies of God*, 251 P.3d 1260, 1265 (Colo.

10

App. 2010) (emphasis added).  On its face, the exculpatory provision does not indicate that the signer releases claims associated with sexual abuse or with the Club's alleged negligence in failing to protect its members from sexual abuse by its employees.

¶ 19    Even so, the Club argues that the provision's reference to "any and all claims," including those related to its "negligence," necessarily encompasses the type of claims alleged here.  The Club says this reference is dispositive because all of Mother Doe's claims are rooted in negligence theories.  We cannot, however, consider the reference to negligence in isolation from the rest of the agreement.  As noted, we must examine the agreement as a whole to assess whether it creates reflects a "likelihood" that a party would fail to recognize that the release provision extended to Mother Doe's particular claims.  *See Chadwick*, 100 P.3d at 467.

¶ 20    The relevant case law illustrates this point.  For instance, in the seminal *Jones* case, the supreme court considered a plaintiff who was injured during a skydiving trip when the airplane crashed.  *See* 623 P.2d at 372-73.  Before the trip, the plaintiff had signed an agreement releasing the defendant, the skydiving facilities operator, from "any and all liability [and] claims," including those resulting

11

from the defendant's "negligence." *Id.* at 372. The plaintiff sued the defendant, alleging negligence as the cause of the crash. *See id.* at 373. The supreme court concluded that the exculpatory agreement clearly and unambiguously expressed the parties' intention to release the defendant from the plaintiff's claim. *See id.* at 378. But the court did not rely solely on the fact that the agreement "used the word 'negligence.'" *Id.* Instead, the court also emphasized that the agreement "specifically included injuries sustained 'while upon the aircraft of the [defendant].'" *Id.* In other words, the agreement referred to the type of injury (and risk of injury) at issue in the plaintiff's claim.

¶ 21 Similarly, in *Wycoff*, a child attending a church-sponsored event was injured while being pulled behind an all-terrain vehicle on an inner tube over a frozen lake. 251 P.3d at 1264. Although an exculpatory agreement signed by the child's mother said the child would participate in "all activities associated with" the event, the agreement did not describe those activities and "certainly d[id] not suggest" the particular activity that led to the child's injuries. *Id.* The division concluded that the agreement did "not pass muster . . . under *Jones*" because it did not provide information allowing

the mother "to assess the degree of risk and the extent of possible injuries from any activity." *Id.* at 1265.

¶ 22    Other Colorado decisions confirm that a court must consider the entire agreement — including its description of the risks assumed and the activities envisioned — when assessing whether the parties' intent to extinguish liability for the claim at issue was clearly, unambiguously, and unequivocally expressed. *See Chadwick*, 100 P.3d at 468-69 (considering the entire agreement and concluding that, although it did not use the term "negligence," the agreement's applicability depended on "whether [the plaintiff] was injured while participating in the activities described in the contract"); *Heil*, 784 P.2d at 784 (explaining that, while the release did not mention "negligence," the release "specifically addressed a risk that adequately described the circumstances of [the plaintiff's] injury"); *Redden*, ¶¶ 27-34 (looking beyond the agreement's reference to "negligence" and noting that the agreement unambiguously encompassed the specific risk at issue).

¶ 23    In particular, and in respectful disagreement with the district court, we find the reasoning of the *Stone* decision instructive here. In *Stone*, ¶ 3, a member of a fitness club tripped on a blow dryer

13

cord that hung to the floor beneath a sink in the club's locker room. The division concluded that the exculpatory clause in the membership agreement did not clearly and unambiguously apply to the member's PLA claim against the club. *Id.* at ¶ 13. The division reached this conclusion even though the exculpatory clause expressly included the member's waiver of any and all claims "resulting from the negligence" of the club. *See id.*, app. at 2. Rather than focus solely on this aspect of the membership agreement, the division considered the agreement as a whole.

¶ 24 The *Stone* division explained that the agreement (1) was written in dense fine print; (2) was replete with legal jargon; (3) referred to unidentified "chapters," which made it "ambiguous and confusing"; (4) focused on the risks associated with exercise and the use of exercise equipment, not on the risks associated with use of the locker room; (5) used the phrase "inherent risk of injury" in the assumption of the risk section, which traditionally "address[es] waivers of liability only for activities that are dangerous or potentially dangerous"; (6) contained a "release of liability" provision whose scope could be determined only by reference to the assumption of risk clause; and (7) repeatedly used the phrases

"includes, but is not limited to," "including and without limitation," as well as simply "including," which appellate courts had interpreted to have conflicting meanings. *Id.* at ¶¶ 24-33.

¶ 25     Several of the circumstances present in *Stone* are present in this case. First, the membership agreement, including the exculpatory provision, is written in very dense fine print. *See also Monitronics Int'l, Inc. v. Veasley*, 746 S.E.2d 793, 802-03 (Ga. Ct. App. 2013) (concluding that, because an exculpatory clause was not explicit and prominent, it did not bar a homeowner's negligence claim against her home security company related to her sexual assault by an intruder). Second, the agreement uses much of the same legal jargon used in the agreement at issue in *Stone*: "subsidiaries, assigns, successors"; "including without limitation"; "I assume all risks of injuries"; and "I agree to indemnify and defend" the Club. As indicated in *Stone*, ¶ 25, "The use of such technical legal language militates against the conclusion that the release of liability was clear and simple to a lay person."

¶ 26     Third, the exculpatory provision focuses on the risks of engaging in athletic activities and using the Club's athletic facilities. Hence, a lay person could sensibly conclude that the provision

15

released only those claims associated with these "types of risks." *Id.* at ¶ 27. Indeed, as in *Stone*, the exculpatory provision here followed a clause that advised members to "consult with a physician prior to engaging in exercise," further evincing an intention to encompass claims related to injuries arising out of strenuous exercise and exercise equipment. *See id.*[4]

¶ 27 Fourth, the exculpatory provision here used both "including without limitation" and "including" — which, as the *Stone* division explained, left the reader "to guess whether the phrases have different meanings" and was ambiguous in light of conflicting appellate decisions on whether such phrases are expansive or restrictive. *Id.* at ¶ 32; *compare Maehal Enters., Inc. v. Thunder Mountain Custom Cycles, Inc.*, 313 P.3d 584, 590 (Colo. App. 2011) (declining to treat the phrase "including, but not limited to" as restrictive), *with Ridgeview Classical Schs. v. Poudre Sch. Dist.*, 214 P.3d 476, 483 (Colo. App. 2008) (concluding that this phrase did not exempt the statute from the limiting rule of *ejusdem generis*).

---

[4] We acknowledge that, unlike the agreement in *Stone v. Life Time Fitness, Inc.*, 2016 COA 189M, ¶ 33, the exculpatory provision here also referred to the risks of using showers and steam rooms. Still, we find *Stone*'s analysis useful overall.

Like in *Stone*, this ambiguity — expansive versus restrictive — is "critical" because nothing in the membership agreement refers to risks of being sexually abused by an employee or the Club's negligence leading to such abuse. *Stone*, ¶ 33 (reasoning that this ambiguity was "critical because nothing in the Agreement refers to risks of using sinks or locker rooms").

¶ 28 Considering these circumstances in combination, we conclude that the exculpatory provision in this case created a substantial likelihood that a reader would fail to recognize the full extent of the release provision — specifically, that it could apply to the risk of a Club employee's sexual abuse of a Club member due, in part, to the Club's alleged negligence or failure to exercise reasonable care. *See id.* at ¶ 35. Relatedly, while we recognize that the exculpatory provision released claims based on use of the Club and "activities associated with" the Club, we reject the notion that the sexual abuse was an activity associated with the Club's tennis coaching services.

¶ 29 Consequently, the membership agreement (1) does not clearly, unambiguously, and unequivocally bar Mother Doe's negligence and PLA claims against the Club based on Jane Doe's alleged

injuries sustained as a result of a Club employee's sexual abuse; and (2) is not valid as applied to those claims. *See id.* at ¶ 2; *see also Wycoff*, 251 P.3d at 1265 ("The form is legally insufficient to release plaintiff's personal injury claims.").

### III. The Club's Alternative Argument to Affirm

¶ 30 In the event we conclude, as we have, that the exculpatory provision does not bar Mother Doe's claims, the Club asks us to affirm the summary judgment nonetheless because the claims fail on the merits. The district court did not reach this issue. So our reversal of the judgment does not mean that the Club must necessarily go to trial on Mother Doe's claims; rather, the court on remand may address the Club's alternative argument for summary judgment. If the district court grants summary judgment on that ground, this court could then review that ruling, with the benefit of the district court's reasoning, if a party seeks review.

¶ 31 Therefore, although cognizant that an appellate court ordinarily may affirm on any ground supported by the record, *Taylor v. Taylor*, 2016 COA 100, ¶ 31, we decline to consider the Club's alternative argument for summary judgment in the first instance. *See Colo. Pool Sys., Inc. v. Scottsdale Ins. Co.*, 2012 COA

178, ¶ 51 (declining to consider alternative ground for summary judgment "because the trial court did not consider [that ground] in its order granting summary judgment" (citing *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1290 (10th Cir. 2011) ("[T]he better practice on issues raised [below] but not ruled on by the district court is to leave the matter to the district court in the first instance.") (citation omitted))); *Estes Park Chamber of Com. v. Town of Estes Park*, 199 P.3d 11, 15-16 (Colo. App. 2007) (remanding for further proceedings, including the district court's assessment of whether material facts were undisputed and whether summary judgment was appropriate). After all, we are a court of review, not of first view. *See PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, ___ U.S. ___, ___, 139 S. Ct. 2051, 2056 (2019).

IV.   Costs Order

¶ 32    Because we reverse the summary judgment, we vacate the order requiring Mother Doe to pay costs.

V.   Conclusion

¶ 33    The judgment is reversed, the costs order is vacated, and the case is remanded for further proceedings consistent with this opinion.

JUDGE WELLING and JUDGE JOHNSON concur.